IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

IONIAN CORP., an Oregon corporation,

                    Plaintiff,                      CV-10-199-ST

        v.                           OPINION AND ORDER

COUNTRY MUTUAL INSURANCE
COMPANY, a foreign corporation,

                    Defendant.

STEWART, Magistrate Judge:

## **INTRODUCTION**

       This action arises out of a fire on August 25, 2009, which destroyed a warehouse owned by plaintiff Ionian Corp. ("Ionian") and leased to Precision Seed Cleaners, Inc. ("Precision Seed"). On October 1, 2009, Ionian filed a proof of claim with defendant Country Mutual Insurance Company ("Country Mutual") for amounts due under an insurance policy purchased

by Precision Seed from Country Mutual. Country Mutual refused coverage because Ionian was not named as a loss payee or an additional insured in the insurance policy.

Ionian initially filed this action in the Circuit Court for the State of Oregon for the County of Multnomah, alleging two claims for breach of insurance contract and for unpaid rent. Country Mutual timely removed the action to this court based on diversity jurisdiction pursuant to 28 USC § 1332. On June 23, 2010, this court granted Ionian's Motion for Leave to File Amended Complaint to add Precision Seed as a party which would destroy diversity jurisdiction and require a remand to state court. However, this court acceded to the parties' request that Ionian need not file its amended complaint until 30 days after a final ruling on Country Mutual's pending motion for summary judgment. All parties have filed written consents to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #20).

Now before this court is Country Mutual's Motion for Summary Judgment (docket #13) and Ionian's Cross-Motion for Partial Summary Judgment (docket #29). For the reasons set forth below, Country Mutual's motion is **DENIED**, and Ionian's cross-motion is **GRANTED** in part and **DENIED** in part.

## STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FRCP 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v.*

*Catrett*, 477 US 317, 323 (1986).  On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party.  *Universal Health Serv., Inc. v. Thompson*, 363 F3d 1013, 1019 (9th Cir 2004).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other.  *See, e.g.*, *Fair Hous. Council v. Riverside Two*, 249 F3d 1132, 1136 (9th Cir 2001).  A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts.  *Id.*  In this diversity action, the court will apply the substantive law of the State of Oregon, although the action remains governed by federal procedural law.  *Gasperini v. Ctr. for Humanities*, 518 US 415, 427 (1996).

## UNDISPUTED FACTS

On the night of August 25, 2009, a fire destroyed Ionian's warehouse.  When the fire occurred, Precision Seed was leasing the warehouse from Ionian.  The lease was a triple net lease effective May 26, 2009, which was drafted by Ionian's owner, John Skourtes ("Skourtes").  It provided, in pertinent part:  "This is a triple net lease; lessee shall furnish and pay for fire insurance on building and third party liability insurance, real estate taxes and all building maintenance . . . Any damages to structure or building improvements, doors, plumbing, electrical etc. will be repaired by lessee within sixty days of occurrence."  Depo. Ex. 1.[1]  Prior to the fire and during Precision Seed's tenancy, Skourtes received a declaration page around May of every year confirming that his warehouse was insured and naming Ionian and Precision Seed as

---

[1] Various deposition exhibits are attached to the Affidavit of Gordon T. Carey, Jr. (docket #32).  Citations to those documents are to the deposition exhibit number.

insureds.[2]  In May 2009, when Skourtes did not receive a declaration page, he called the owner

of Precision Seed, Paul Kloft ("Kloft").  Kloft told him the warehouse was not insured because

the insurance policy had lapsed.  Skourtes insisted that Precision Seed reinstate the policy.

On July 24, 2009, Kloft delivered a premium check of approximately $6,000 to Country

Mutual's captive agent, James King ("King"), to reinstate insurance coverage for the warehouse,

together with Country Mutual's "Reinstatement Binding Form."  Depo. Ex. 7.  King accepted the

premium payment, which provided temporary coverage while Country Mutual considered the

request for reinstatement.

Sometime after the temporary coverage was created, Kloft received the "Schedule of

Property Changes" (Depo. Ex. 9) which he copied and forwarded to Skourtes.  After reviewing

that document, Skourtes realized that Ionian was not named as an additional insured on the

policy.  Consequently, sometime before the fire, he called King's office, spoke with Linda,

King's administrative assistant, and requested that Country Mutual add Ionian as an additional

insured to the policy.  Linda assured Skourtes that she would "take care of it."  Skourtes Depo.,

p. 35.[3]

On August 25, 2009, prior to the fire, Linda also sent the following email to Craig

Stokowski who worked in Country Mutual's underwriting department:

> Craig:
> The Insured called in with the following changes, but, there is no way I can fit all

---

[2]  The only document on record naming Ionian as an additional insured is an expired Commercial Package Policy Application effective June 30, 2005.  Depo. Ex. 11, p. 4.

[3]  Various pages of the depositions of John Skourtes and James King are attached to the Affidavit of Gordon T. Carey, Jr. (docket #32).  Citations to those depositions are to the last name of the deponent and the page number of the deposition transcript.

the revisions on the Commercial Change Request Form (if there is another way of doing this, please let me know):

Effective reinstatement date of 07-24-2009 –
…apparently, the owner of the building located at 8765 Pueblo Avenue SE in Brooks, Oregon, was left off at that time of reinstatement.

…in any event, the owner / additional insured needs to be listed as follows –
IONIAN CORP.
17010 SW Weir road
Beaverton, OR 97007

…the owner of IONIAN CORP. is requesting a copy of this change, showing the 07-24-2009 effective date . . . .

Depo. Ex. 8.

Later on the night of August 25, 2009, a fire destroyed Ionian's warehouse. After the fire, Country Mutual conducted an investigation on the property and hired a contractor who placed a fence around the property during the term of the investigation.

Country Mutual issued the insurance policy on November 4, 2009, which did not name Ionian as an additional insured.

## DISCUSSION

### I. Issues Presented

Country Mutual seeks summary judgment against both of Ionian's claims. With respect to the First Claim for breach of an insurance contract, Country Mutual contends that Ionian is not entitled to recover under Precision Seed's insurance policy because Ionian was not a loss-payee or additional named insured and Precision Seed did not intend to benefit Ionian when it purchased the insurance policy. With respect to Ionian's Second Claim for rents, Country Mutual contends that because Ionian has failed to establish a landlord-tenant relationship with

Country Mutual, it is not entitled to recover any rents during the time Country Mutual occupied the building site while investigating the fire.

In its cross-motion for summary judgment, Ionian contends that Country Mutual's captive agent had both actual and apparent authority to – and did – bind Ionian as an additional named insured in the insurance policy purchased by Precision Seed. Additionally, Ionian contends that it was an intended third-party beneficiary of the insurance contract. Furthermore, Ionian urges this court to deny Country Mutual's motion for summary judgement because: (1) Country Mutual ratified the actions of its captive agent; (2) Ionian is a creditor beneficiary of the insurance policy between Precision Seed and Country Mutual; (3) Ionian has an equitable lien on the insurance proceeds; and (4) Country Mutual should be estopped from denying that its captive agent bound Country Mutual.

For the reasons that follow, this court concludes that Country Mutual's captive agent had both actual and apparent authority to add additional insureds (obviating the need to address many of the issues raised by Ionian's cross-motion), but that genuine issues of material fact preclude summary judgment on the Second Claim. Accordingly, Country Mutual's motion is denied, and Ionian's cross-motion is granted as to the First Claim and denied as to the Second Claim.

## II. **Actual and Apparent Authority**

### A. **Actual Authority**

Ionian first argues that as a captive agent of Country Mutual, King had actual authority to orally bind Country Mutual to add Ionian as an additional insured.

In Oregon, binders are contracts for temporary insurance that are effective until permanent insurance is approved or disapproved. *United Pac. Ins. v. Truck Ins. Exch.*, 273 Or

283, 289-90, 541 P2d 448, 452 (1975). They are "[a]n insurer's memorandum giving the insured temporary coverage while the application for an insurance policy is being processed or while the formal policy is being prepared." *Black's Law Dictionary* 190 (9th ed 2009). They "may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder

. . ." ORS 742.043(1).

Agents may bind principals when they act with actual authority. *E.g.*, *Taylor v. Ramsay-Gerding Constr. Co.*, 345 Or 403, 409, 196 P3d 532, 536 (2008) (citations omitted). Actual authority may be express or implied. *Id* at 410, 196 P3d at 536. An agent has express authority when a principal explicitly authorizes the agent to perform certain acts. *Id.* "Implied authority arises when an agent, to whom the principal has given direct authorization to complete a particular act on behalf of the principal, performs acts incidental to the authorized endeavor, and the authority to perform those incidental acts is inferred from the original grant of authority." *E.g.*, *Badger v. Paulson Inv. Co., Inc.*, 311 Or 14, 24, 803 P2d 1178, 1183 (1991) (citation omitted).

In support of its argument that King had actual authority, Ionian points to the following deposition testimony by King:

> Q. Okay. And in your own mind at that point in time, did you have authority to bind [Country Mutual] to Ionian?
> A. We had the authority to get Precision Seed's approval to add that and to make the request to [Country Mutual].
> Q. And you had that?
> A. Yes.
> Q. You had the approval?
> A. Yes.

Q. Of Precision Seed?
A. Yes.
Q. And you did make the request?
A. Yes.
Q. But did you have the authority yourself to bind [Country Mutual] at that point in time - - bind the company to Ionian corporation?
A. I believe I did.
Q. And did you, as far as you know?
A. Yes.

King Depo., pp. 29-30.

Additionally, the Reinstatement Binding Form, which was submitted with Kloft's premium payment, states that "the undersigned agent has extended and has the authority to extend TEMPORARY coverage while the Company considers this request for reinstatement." Depo. Ex. 7. Thus, according to the undisputed evidence, King had actual authority to extend temporary coverage to prospective insureds while their applications were being reviewed by Country Mutual for final approval. If King had such broad authority to provide temporary insurance coverage to prospective insureds, then, as he believed, he necessarily had the authority to bind Country Mutual to less extensive coverage, such as adding additional insureds to insurance policies already in effect. Given the broad scope of King's actual authority, this court concludes that King had binding authority to add Ionian as an additional insured.

Lastly, whatever form a binder takes, Country Mutual contends that it must expressly state that it is a binder of insurance and that it made no such statement here. In *Brock v. State Farm Mut. Auto. Ins. Co.*, 195 Or App 519, 532-33, 98 P3d 759, 766 (2004), the court concluded the "application [] did not constitute or embody an insurance binder" because "nothing in the language suggest[ed] that the application form itself [was] a binder." *Brock*, however, is distinguishable. *Brock* did not involve an oral binder, as is the case here, and it did not hold, as

Country Mutual contends, that for an oral binder to be effective, the agent must state that it is binding.

## B. **Apparent Authority**

Even if King lacked actual authority, he had apparent authority to add additional insureds to Country Mutual insurance policies. Apparent authority "arises when the agent does not possess the actual or implied authority to act for the principal in the matter, but 'the principal has clothed the agent with apparent authority to act for the principal in that particular.'" *E.g.*, *Badger*, 311 Or at 24, 803 P2d at 1183. "For a principal to be bound by an agent's action, the principal must take some affirmative step, either to grant the agent authority or to create the appearance of authority. An agent's actions, standing alone and without some action by the principal, cannot create authority to bind the principal." *Taylor*, 345 Or at 410, 196 P3d at 536. Thus, "[a]pparent authority to do any particular act can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter." *Wiggins v. Barrett & Assoc., Inc.*, 295 Or 679, 687-88, 669 P2d 1132, 1139 (1983) (citation omitted). Additionally, the third-party must "rely on that belief" when dealing with the agent. *Id* at 688, 669 P2d at 1139.

Oregon courts follow the RESTATEMENT (SECOND) OF AGENCY § 27 (1958). *See Taylor*, 345 Or at 411, 196 P3d at 536. Comment a to that section provides as follows:

> For apparent authority there is the basic requirement that the principal be responsible for the information which comes to the mind of the third person . . . Thus, either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief. The information received by the third person may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents or other indicia of authority given by the principal

to the agent, or from third persons who have heard of the agent's authority
through authorized or permitted channels of communication.

Country Mutual contends that Ionian has provided no evidence of any conduct indicating that it consented to King adding Ionian as an additional insured.  However, Country Mutual held King out as its captive agent with the authority to accept premium payments and to extend temporary coverage to prospective insureds.  By doing so, Country Mutual created the appearance that King also had the authority to act on its behalf on all coverage issues, including adding an additional insured.  Furthermore, after contacting King's office and requesting that Ionian be added as an additional insured, Linda assured Skourtes that she would "take care of it."[4]  In light of this evidence, Country Mutual cloaked King with apparent authority to add Ionian as an additional insured under Precision Seed's insurance policy.

The case relied on by Country Mutual, *Jones v. Nunley*, 274 Or 591, 595, 547 P2d 616, 618 (1976), is distinguishable.  In *Jones*, the court concluded the realtor did not have apparent authority to bind the prospective buyer.  However, the buyer did not hold the realtor out as its captive agent, as Country Mutual did for King.  More importantly, negotiations between the buyer and seller in *Jones* took place through face-to-face meetings and personal correspondence without the realtor.  In contrast, here King was regularly involved in prior dealings with Precision Seed.  Accordingly, this court is not persuaded by *Jones*.

///

///

## III.  <u>Stranger to the Contract</u>

---

[4] Although arguably inadmissible evidence, Country Mutual's adjuster, Ron Grey, confirmed that Country Mutual had been notified 36 hours before the fire that Ionian was a loss payee.  Skourtes Depo., p. 36.

Country Mutual contends that Ionian is not entitled to any proceeds under Precision Seeds' insurance policy since it is a stranger to the contract and its benefits. However, the fact that the insurance policy did not name Ionian as an additional insured has limited significance because it was issued after the fire destroyed Ionian's warehouse. Further, it took Country Mutual over 60 days to decline Ionian as an additional insured, well over the 30 days it normally takes to make such decisions. King Depo., p. 32.

Country Mutual also cites three cases to support its position. *Transp. Equip. Rentals, Inc. v. Oregon Auto Ins. Co.*, 257 Or 288, 478 P2d 620 (1970); *Yoshida v. Sec. Ins. Co.*, 145 Or 325, 26 P2d 1082 (1933); *Miller v. Gold Beach Packing Co.*, 131 Or 302, 282 P 764 (1929). However, none of those cases involved an oral binder made under the circumstances here. They also are distinguishable for other reasons. Unlike the present case, the lease in *Miller* did not require the assignee to obtain insurance to cover the lessor's building. In *Yoshida*, the essential fact on which the court relied, and the fact missing from this case, is that the contracting parties had deleted a provision contained in previous leases requiring the lessees to insure the premises and to pay the lessors the insurance proceeds. Finally, in contrast to the present case, the owner in *Transp. Equip. Rentals, Inc.* was in possession of the asset when it was destroyed and had already been compensated under his own insurance policy. As such, those cases are not helpful or persuasive.

## IV.  Rent Owed

Ionian contends that Country Mutual owes rent for the months it took possession of its property to conduct its investigation, citing ORS 91.050 and 91.040.

ORS 91.050 provides that "[o]ne who enters into the possession of real estate with the consent of the owners, under circumstances not showing an intention to create a freehold interest, is considered a tenant at will." Pursuant to ORS 91.040, "[o]ne who comes into possession of the real estate of another lawfully, but who holds over by wrong after the termination of the term, is considered as a tenant at sufferance." Both statutes apply to tenancies at will and tenancies at sufferance, respectively. Pursuant to ORS 91.010, tenancies exist where one has "let real estate as a landlord." Since Ionian did not lease the warehouse to Country Mutual, the statutes on which Ionian relies are inapplicable.

Ionian also contends that even if no landlord-tenant relationship existed, it is still entitled to recover lost rent in the form of mesne profits. In support of its argument, it cites *Irwin v. McElroy*, 91 Or 232, 178 P 791 (1919), and *Sec. & Inv. Co. v. Locks Towing Co.*, 213 Or 503, 326 P2d 439 (1958). Those cases, however, involved acts of trespass by the defendants. *Irwin*, 91 Or at 235, 178 P at 792 ("The action was to recover for the alleged continuing trespass and damages for the same."); *Security & Inv. Co.*, 213 Or at 504, 326 P2d at 439 ("This is an appeal in a suit for an injunction restraining the alleged continuing trespasses of the defendants . . . ."). Here the record indicates that Country Mutual had either express or implied consent to enter and possess Ionian's property to investigate the fire. On the other hand, the record also supports the possibility that Country Mutual trespassed and unlawfully possessed Ionian's property by erecting a fence around it. Accordingly, a genuine issue of material fact remains as to whether Country Mutual unlawfully possessed Ionian's premises during its investigation of the fire.

## ORDER

For the reasons stated above, Country Mutual's Motion for Summary Judgment (docket

#13) is **DENIED,** and Ionian's Cross Motion for Partial Summary Judgment (docket #29) is

**GRANTED** as to the First Claim and **DENIED** as to the Second Claim.

DATED this 5th day of October 2010.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge