IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

IONIAN CORP., an Oregon corporation,

        Plaintiff,

        v.

COUNTRY MUTUAL INSURANCE
COMPANY, a foreign corporation,

        Defendant/Interpleader
        Plaintiff,

        v.

IONIAN CORP., an Oregon corporation,
PRECISION SEED CLEANERS INC., an Oregon
corporation,

        Interpleader Defendants.

3:10-cv-0199-ST

FINDINGS AND
RECOMMENDATIONS

1 - FINDINGS AND RECOMMENDATIONS

STEWART, Magistrate Judge:

## INTRODUCTION

This action arises out of a fire on August 25, 2009, which destroyed a warehouse owned by plaintiff, Ionian Corp. ("Ionian"), and leased to interpleader defendant, Precision Seed Cleaners, Inc. ("Precision Seed"). On October 1, 2009, Ionian filed a proof of claim with defendant, Country Mutual Insurance Company ("Country Mutual"), for amounts due under an insurance policy purchased by Precision Seed from Country Mutual. Country Mutual refused coverage because Ionian was not named as a loss payee or an additional insured in the insurance policy.

Ionian initially filed this action in the Circuit Court for the State of Oregon for the County of Multnomah, alleging two claims against Country Mutual for breach of insurance contract and for rent. Country Mutual timely removed the action to this court based on diversity jurisdiction pursuant to 28 USC § 1332. On June 23, 2010, this court granted Ionian's Motion for Leave to File Amended Complaint to add Precision Seed as a party which would destroy diversity jurisdiction and require a remand to state court. However, this court acceded to the parties' request that Ionian defer filing its amended complaint until 30 days after a final ruling on Country Mutual's pending motion for summary judgment.

Both Country Mutual and Ionian filed cross-motions for summary judgment. At that time, all parties in the case had filed written consents to allow a Magistrate Judge to enter final orders and judgment in accordance with FRCP 73 and 28 USC § 636(c) (docket #20). By Opinion and Order dated October 5, 2010 ("October 5 O&O"), this court concluded, *inter alia*,

that Ionian was an additional insured on Precision Seed's policy issued by Country Mutual and, therefore, denied Country Mutual's motion and granted Ionian's motion in part (docket #49).

In the meantime, Precision Seed filed a suit in this court against Country Mutual, Case No. 3:10-cv-1023-JO, alleging breach of its insurance policy premised on its claim to the insurance proceeds at issue. Country Mutual and Ionian then stipulated to the filing of an Amended Answer by Country Mutual in this case alleging a counterclaim for interpleader against both Ionian and Precision Seed (dockets #60 & #61). They also stipulated to the deposit into court by Country Mutual of the policy limits of $350,000.00, plus $10,000.00 for cleanup costs and $12,750.00 for a motor control system, for a total of $372,750.00 (dockets #62 & #65). After filing an Answer to the interpleader counterclaim, Precision Seed stipulated to dismissal of its counterclaims in this case against Country Mutual in favor of amending its claims in its other pending case against Country Mutual to add those counterclaims (dockets #75 & #76). Country Mutual was then dismissed from this case (docket #84). As a result, all claims by Precision Seed against Country Mutual are included in the other case.

## PENDING CLAIMS

Since Country Mutual has been dismissed from this case, the pending claims are between Ionian and Precision Seed to resolve their competing claims to the insurance policy proceeds as alleged in Precision Seed's First Amended Answer to Interpleader and Cross-Claims (docket #87) and Ionian's Answer to Amended Cross-Claims of Precision Seed (docket #88).

Precision Seed alleges the following crossclaims against Ionian:

First Crossclaim:        Unjust Enrichment;

Second Crossclaim:   Conversion;

3 - FINDINGS AND RECOMMENDATIONS

Third Crossclaim:        Breach of Purchase Agreement - Specific Performance

Fourth Crossclaim:      Rescission of Lease Agreement; and

Fifth Crossclaim:        Fraud.

In response, Ionian alleges the following affirmative defenses:

First Affirmative Defense:      Estoppel/waiver

Second Affirmative Defense:  Not real party in interest

Third Affirmative Defense:    Statute of Frauds

Fourth Affirmative Defense:  Statute of Limitations

Ionian also alleges a First Crossclaim against Precision Seed for unpaid rent and a Second Crossclaim for cleanup costs.

## PENDING MOTIONS

Precision Seed filed a Motion to Vacate this court's October 5 O&O (docket #89) and a Motion for Partial Summary Judgment (docket #91). Ionian responded by filing its own Motion for Summary Judgment (docket #100). Due to the change in parties, there is no longer full consent to a Magistrate Judge.

At the hearing on August 10, 2011, this court denied Precision Seed's Motion to Vacate based on Ionian's concession that the October 5 O&O has no binding effect on Precision Seed (docket #122). For the reasons set forth below, the parties' cross-motions for summary judgment should be granted in part and denied in part.

///

///

///

4 - FINDINGS AND RECOMMENDATIONS

## UNDISPUTED FACTS

On or about December 14, 2004, Spada Distributing Co., Inc. sold to Ionian the real

property located at 8765 Pueblo Ave. NE in Brooks, Oregon.  Bragg Decl. (docket #117),[1] Ex. 1

(Bargain and Sale Deed).  The next day, December 15 2004, John Skourtes, Vice-President of

Ionian, offered to sell the property to Paul Kloft, the owner of Precision Seed, in a memorandum

which provides in relevant part as follows:

> We are prepared to sell you the above property under the following
> terms[:]
>
> Sell price $330,000.  Monthly payments beginning 1 April 05
> including interest and principal of $3,747.08 for 120 months, 6 ½%
> interest per annum on unpaid balance.  Payments first nine
> month[s] $2,500 per month.  Balloon payment due 1 Jan 06,
> $11,224.00 plus interest of [$]305.69 which represents short fall
> between $3,747.08 versus actual payment of $2,500. * * *
>
> The official real estate contract will be prepared 1 January 06 upon
> receipt of balloon payment.  The figures on this agreement will be
> incorporated in the real estate contract to reflect the outstanding
> balance as of 1 Jan 06.

Kloft Decl. (docket #94), ¶ 3 & Ex.1 ("Purchase Agreement").

Mr. Kloft accepted that offer on December 28, 2004, when he made the first payment due

of $4,366.48.  *Id*, ¶ 3.  Mr. Kloft continued to make all payments due in 2005 and the balloon

payment due January 1, 2006.[2]  *Id*, ¶ 5 & Ex. 3.  However, no "official real estate contract" was

prepared on January 1, 2006, as contemplated by the Purchase Agreement.  Skourtes Decl.

(docket #93), ¶ 2.  Instead, on March 10, 2006, Mr. Skourtes asked Mr. Kloft to sign an

---

[1]  Citations to declarations and affidavits are to the last name of the declarant or affiant, the docket number, and the paragraph or exhibit numbers.

[2]  Mr. Skourtes disputes that the balloon payment was made when due.  Skourtes Decl. (docket #93), ¶ 2.  However, for purposes of these motions, Ionian accepts the schedule of payments submitted by Precision Seed.

Installment Note, to be secured by a trust deed, indicating that the principal amount had been paid down from the purchase price of $330,000.00 to $305,706.00.[3] Kloft Decl. (docket #94), ¶ 4. Mr. Kloft did so. *Id*, ¶ 4 & Ex. 2.

Pursuant to the Purchase Agreement and Installment Note, Precision Seed made all payments due during 2006, although not always on time. *Id*, ¶ 5 & Exs. 3-4; Spada Depo., p. 110 (agreeing that all of the payments Precision made to Ionian were for the purchase of the property). In 2007 and 2008, Precision Seed made multiple late payments, with the last payment of $11,000.00 made on November 20, 2008, before the fire in August 2009. Kloft Decl. (docket #94), ¶ 6 & Ex. 3. Ionian accepted each of those payments. *Id*, ¶ 6 & Ex. 4; Skourtes Depo. (May 10, 2011), p. 86; Spada Depo., pp. 55-56.

In early 2009, Mr. Kloft allowed Precision Seed's insurance policy through Country Mutual to lapse for non-payment. Kloft Decl. (docket #94), ¶ 7.

In the spring or early summer of 2009, Precision Seed was still delinquent in its payments, and Mr. Skourtes learned that the fire insurance had lapsed. Skourtes Decl. (docket #93), ¶ 2. Mr. Skourtes told Mr. Kloft that he would have to vacate the premises.[4] *Id*. Mr. Kloft asked Mr. Skourtes not to evict him and, as an accommodation, Mr. Skourtes agreed to lease the premises to Precision Seed for a lower monthly payment. *Id*; Kloft Decl. (docket #94), ¶ 8;

---

[3] Although Mr. Kloft's declaration states that the principal had been paid down to $305,776.00, the Installment Note is for $305,706.00. This court assumes that the different figure in the declaration is a $70.00 typographical error.

[4] Mr. Skourtes also claims that six weeks to two months before the Lease was signed, he gave Mr. Kloft a memorandum that "his right to buy the building had been rescinded." Skourtes Depo. (May 10, 2011), pp. 96-97. However, he has no copy of that document because he threw away the file several years ago and also suffered a computer failure. *Id*, pp. 89, 97-98.

Skourtes Depo. (June 1, 2010), pp. 23-25, 99. Ionian and Precision Seed signed a lease on or

about May 26, 2009, which provided in relevant part as follows:

> The lease shall commence on 1 June 2009 and end at midnight on
> the 31st day of May 2010. For a monthly rental fee of $3,000 per
> month . . .
>
> This is a triple net lease; lessee shall furnish and pay for fire
> insurance on building and third party liability insurance, real estate
> taxes and all building maintenance.

Kloft Decl. (docket #94), Ex. 5 ("Lease").

At that time, Mr. Kloft believed that the Purchase Agreement was no longer in effect. *Id*,

¶ 8. Had he known that the Purchase Agreement was still in effect, he would not have signed the

Lease on behalf of Precision Seed. *Id*.

During its occupancy of the premises, Precision Seed made numerous substantial repairs

to the building to make it useable. These repairs included work to interior walls, floors, the roof,

plumbing, framing, cleaning up of refuse, repairing concrete and gas lines, weeding, *etc*. Kloft

Depo., pp. 30-33.

In approximately May of each year, Mr. Skourtes would generally receive a declaration

page confirming insurance coverage for both Ionian and Precision Seed. Skourtes Aff. (docket

#34), ¶ 6. In May 2009, he did not receive a declaration page, which he did not realize until July

2009. *Id*. He then called Mr. Kloft who advised that the policy had lapsed. *Id*. Mr. Skourtes

insisted that it be reinstated and that Ionian's interest be protected. Mr. Kloft agreed, and on July

24, 2009, hand-delivered a check for the premium payment to Country Mutual's agent, Mr. Jim

King, in order to reinstate coverage. *Id*; Kloft Decl. (docket #94), ¶ 9. Pursuant to his authority

from Country Mutual, Mr. King accepted the six-months' premium payment and bound

7 - FINDINGS AND RECOMMENDATIONS

coverage.  King Depo. (June 1, 2010), pp. 20, 22, 27-28 & Depo. Ex. 7.  Precision Seed

submitted the premium payment with Country Mutual's "Reinstatement Binding Form," pursuant

to which Country Mutual reinstated coverage.  Country Mutual later issued the policy which was

in effect on the day of the fire.  Sturm Decl. (docket #16), Ex. 1, p. 3.  This policy insured,

among other things, the building, including tenant improvements and certain equipment owned

by Precision Seed.  Kloft Decl. (docket #94), ¶ 9.

After he received it, Mr. Kloft forwarded a copy of the "Schedule of Property Changes"

to Mr. Skourtes in the middle of August.  Mr. Skourtes noticed that Ionian was not named on the

declarations page as it had been previously.  Skourtes Aff. (docket #34), ¶ 7.  He called

Mr. King's office and asked that the policy include Ionian as an additional insured.  He spoke

with Linda, an administrative assistant to Mr. King, who said she already knew "all about it" and

would "take care of it."  *Id*; Skourtes Depo. (June 1, 2010), p. 35; Carey Aff. (docket #32), ¶ 4 &

Depo. Ex. 8.  She then sent the following email to Mr. Craig Stokowski of Country Mutual on

August 25, 2009:

> The insured called in with the following changes . . .
> * * *
> the owner/additional insured needs to be listed as follows -
> IONIAN CORP.
> * * *
> . . . the owner of IONIAN CORP. is requesting a copy of this
> change . . .

Carey Aff. (docket #32), ¶ 4 & Depo. Ex. 8.

Mr. King confirmed in his deposition that he bound Country Mutual to cover Ionian:

> Q: But did you have the authority yourself to bind them at that
> point in time--bind the company to Ionian Corporation?
> A: I believe I did.

8 - FINDINGS AND RECOMMENDATIONS

> Q: And did you, as far as you know?
> A: Yes.

King Depo. (June 1, 2010), p. 30.

When Mr. Kloft learned that Ionian had asked to be made an additional insured, he called

Mr. King to ask what this would mean to Precision Seed.  Kloft Decl. (docket #94), ¶ 11.  He left

a message for Mr. King, but never discussed the issue with him.  *Id*.  Mr. Kloft did not request

that Ionian be made an additional insured to either the building or equipment.  *Id*, ¶ 10.  Precision

Seed gave no written confirmation to add Ionian as an additional insured.  *Id*, ¶ 12.

On August 26, 2009, the building was destroyed by a fire.  *Id*, ¶ 13. On September 22,

2009, Ionian terminated the Lease, adding that the "[o]nly outstanding liability is cleanup of the

site which should be the responsibility of the insurance carrier." *Id*, ¶ 14 & Ex. 6.

In the summer of 2010, Ionian hired GRS Erectors, Inc. to perform the demolition and

debris removal for the cost of $30,000.00 plus the salvage as payment for the debris removal.

Stanerson Decl. (docket #97), ¶¶ 2-3.   Cherry City Metals picked up the scrap metal and salvage

for which it paid $15,013.27.  *Id*, ¶ 4; Cherry City Metals Custodian of Records Decl. (docket

#98), pp 3-14.

At the hearing on these motions, counsel for Precision Seed indicated that Ionian sold the

property some time in the summer of 2011.

///

///

///

///


9 - FINDINGS AND RECOMMENDATIONS

## FINDINGS

### I. Threshold Issues

Ionian's motion raises two threshold issues which need to be resolved before addressing the merits of the parties' motions, namely subject matter jurisdiction over and the real party in interest for Precision Seed's crossclaims.

### A. Subject Matter Jurisdiction

A party may only file a crossclaim against a co-party that either "arises out of the transaction or occurrence that is the subject matter of the original action" or that "relates to any property that is the subject matter of the original action."  FRCP 13(g).  However, this rule must be liberally construed to avoid duplicative litigation.  *See Progressive Cas. Ins. Co. v. Belmont Bancorp*, 199 FRD 219, 233 (SD Ohio 2001).  Under that liberal standard, courts apply a "logical relationship test."  *Peak N.D., LLC v. Wilkinson*, No. 4:08-cv-087, 2010 WL 2163503, at *5 (D ND May 25, 2010) (citation omitted).  Ionian contends that some of Precision Seed's crossclaims should be dismissed under FRCP 13(g) for lack of subject matter jurisdiction.

 The "property that is the subject matter of the original action" filed by Ionian against Country Mutual is the insurance proceeds deposited with the Court payable under the policy as a result of the fire.  After Country Mutual interpled the insurance proceeds, this case now involves the competing claims of Ionian and Precision Seed to those insurance proceeds, as well as other crossclaims between them.

Precision Seed makes a claim to all or part of the insurance proceeds based on its insurable interest in the property both as the named insured on the Country Mutual policy and as the alleged purchaser of the property.  Determination of which party is entitled to what portion of

the insurance proceeds impacts the distribution of the interpled funds, the subject of this interpleader action. Under FRCP 13(g), this court has subject matter jurisdiction to resolve all of Precision Seed's crossclaims that involve entitlement to any part of the insurance proceeds, including the issues of whether the Purchase Agreement or the Lease was in effect at the time of the loss and whether Ionian is an additional insured.

As Ionian concedes, two crossclaims are properly before the court, namely Precision Seed's First Crossclaim for unjust enrichment alleging that Ionian is not entitled to the insurance proceeds as an additional insured, and its Second Crossclaim for conversion which arises out of the fire which destroyed the building and resulted in payment of those insurance proceeds. In addition, FRCP 13(g) allows jurisdiction over the Fourth Crossclaim requesting rescission of the Lease due to a mutual mistake of fact because it relates to parties' relationship to the property at the time of the loss which determines the extent of their insurable interest.

However, the remaining two crossclaims are more problematic. In paragraph 54 of the Third Crossclaim, Precision Seed alleges that pursuant to the Purchase Agreement, Ionian, "as the mortgagee, is entitled to no more of the proceeds than equal the remaining balance on the Purchase Agreement." Interpleader Defendant Precision Seed Cleaners, Inc.'s First Amended Answer to Interpleader and Cross-Claims (docket #87), ¶ 54. To that extent, this crossclaim is permissible under FRCP 13(g) since it pertains directly to how much of the insurance proceeds should be distributed to Ionian, as opposed to Precision Seed. However, paragraph 56 of this same crossclaim also seeks an order "directing that Ionian Corp. perform pursuant to the terms of the Purchase Agreement, and convey the real property to Precision Seed." *Id*, ¶ 56. That request goes well beyond any claim to the insurance proceeds.

11 - FINDINGS AND RECOMMENDATIONS

This court is not persuaded that the definition of the "property that is the subject matter of the original action" under FRCP 13(g) includes every claim involving any aspect of the property. This court must decide ownership of the property for the purpose of ascertaining each party's insurable interest, but not whether Ionian should be required to specifically perform the Purchase Agreement by conveying the property to Precision Seed. Therefore, Ionian should be granted partial summary judgment against paragraph 56 of the Third Crossclaim for lack of subject matter jurisdiction.

As Precision Seed acknowledges, its Fifth Crossclaim for fraud is furthest removed from the determination of ownership or insurable interest. It alleges that Mr. Skourtes made false representations or omitted material facts relating to Ionian's performance of the Purchase Agreement. As a result, Precision Seed seeks damages in the sum of $174,021.54 and punitive damages of $1 million. Although this crossclaim may rest on many of the same facts as those relating to rescission of the Lease, it seeks relief far beyond entitlement to the insurance proceeds at issue in this action. Instead, it seeks a judgment for damages against Ionian which it can then attempt to collect from the insurance proceeds deposited with the court. Therefore, Ionian should be granted summary judgment as to the Fifth Crossclaim for lack of subject matter jurisdiction.

## B. Real Party in Interest (Second Affirmative Defense)

Ionian's Second Affirmative Defense alleges that Precision Seed is not the real party in interest under FRCP 17. Mr. Kloft, not Precision Seed, signed the Purchase Agreement. Thus, to the extent that Precision Seed's crossclaims rest of the validity of the Purchase Agreement, Ionian contends that they belong to Mr. Kloft, and not to Precision Seed which is only a party to the Lease. However, the policy was issued by County Mutual to Precision Seed. Therefore,

Precision Seed is the real party in interest with respect to opposing distribution of any of the insurance proceeds to Ionian.

Precision Seed is clearly the real party in interest as to the First Crossclaim for unjust enrichment which rests on the allegation that Ionian is not an additional insured under the policy. That crossclaim is independent of the dispute over the validity of the Purchase Agreement. Precision Seed also is clearly the real party in interest as to the Second Crossclaim for conversion based on its alleged ownership of the scrap metal and as to the Fourth Crossclaim for rescission of the Lease based on a mistake of fact by its agent, Mr. Kloft.

The problem lies with the Third and Fifth Crossclaims alleging breach of the Purchase Agreement and fraud. As the "buyer" named in the Purchase Agreement, Mr. Kloft may pursue these claims. Yet the Third Crossclaim alleges in paragraph 55, contrary to the undisputed terms of the Purchase Agreement, that "Precision Seed, as the purchaser, is entitled to the real property," and the Fifth Crossclaim seeks damages based on the false representation alleged in paragraph 65 that Ionian "would convey legal title to the property subject to the Purchase Agreement to Paul Kloft *and* Precision Seed" (emphasis added).

Even if Precision Seed is not the real party in interest, the proper remedy is not dismissal. Pursuant to FRCP 17(a)(3), the real party in interest must be given a reasonable time after objection "to ratify, join, or be substituted into the action." Mr. Kloft, as the real party in interest, has now "ratifi[ed] all of the actions taken by [Precision Seed] in pursuing the claims associated with the Purchase Agreement in this action." Kloft Decl. (docket #109), ¶ 5. Therefore, this court must proceed as though these claims were initially brought by Mr. Kloft,

13 - FINDINGS AND RECOMMENDATIONS

and should deny summary judgment to Ionian and *sua sponte* grant summary judgment to Precision Seed as to the Second Affirmative Defense.

## II.  Precision Seed's Motion

Precision Seed seeks summary judgment in the form of an order declaring that the Purchase Agreement is still valid, that the Lease is rescinded, and directing that all of the proceeds from the insurance policy be paid to Precision Seed.  In addition, Precision Seed seeks an award of $15,013.87 for the conversion of its scrap metal by Ionian and dismissal of Ionian's First Affirmative Defense alleging estoppel/waiver[5] and both of Ionian's crossclaims seeking past due rent and cleanup costs.

This motion raises the following issues:  (1) whether the Purchase Agreement or the Lease was in effect at the time of the fire; (2) whether Ionian was made an additional insured to the policy; (3) whether the policy covered a motor control system owned by Precision Seed; (4) even if the Lease was in effect, whether Ionian waived its claim to unpaid rent; (5) even if the Lease was in effect, whether Ionian can recover its cleanup costs; and (6) whether Ionian converted Precision Seed's scrap metal.  Resolution of the first two issues provides the parties with a basis to calculate Ionian's direct claim to the insurance proceeds or determine the extent of Ionian's claim against Precision Seed or Mr. Kloft unrelated to the proceeds.

If Ionian is an additional insured and the Lease is in effect, as Ionian claims, then Ionian would be entitled to recover the actual cash value of the building.  However, if Ionian is an

---

[5]  Precision Seed's motion does not include Ionian's other three affirmative defenses.

additional insured and the Purchase Agreement is in effect, as Precision Seed claims, then Ionian

is only entitled to the outstanding mortgage amount.[6]

If Ionian is not an additional insured, then it is not entitled to any of the insurance

proceeds directly, but instead has a potential claim against Precision Seed or Mr. Kloft,

depending upon whether the Lease or Purchase Agreement is valid.  If the Purchase Agreement is

valid, then Ionian is entitled to payments through the term of the Note.  However, if the Lease is

valid, then Ionian has only a claim for the repair of the building.

The parties agree that the cost to repair the building, the actual cash value of the building

and the remaining balance on the Purchase Agreement are not the same thing.  Therefore, in

order to determine which of those values will be at issue for the remainder of this case, it is

necessary to determine at the outset whether Ionian is an additional insured and whether the

Lease or the Purchase Agreement was in effect at the time of the fire.

**A.  <u>Purchase Agreement or Lease</u>**

Precision Seed contends that the Purchase Agreement is valid and was in effect at the

time of the fire for several reasons.

First, it argues that the Purchase Agreement was subject to Oregon's Forfeiture Under

Land Sale Contract law, ORS 93.905-.945.  Thus, any nonjudicial cancellation of the Purchase

Agreement by Ionian must comply with ORS 93.910 which requires the seller to provide a notice

of default to the purchaser as provided in ORS 93.915.  ORS 93.915 requires that the notice of

default be sent in writing and contain specific information relating to the basis for the default

---

[6]  Precision Seed estimates that the difference between Ionian being an additional insured under the Lease, as opposed to the Purchase Agreement, is about $50,000.00.

with an opportunity for the purchaser to cure. Ionian never sent a notice of intent to default to Mr. Kloft and, according to Precision Seed, waived those terms by accepting late payments, citing *Peck v. Sec. Bank of Or.*, 276 Or 61, 67, 554 P2d 505, 508 (1976).

This argument is rejected because the Purchase Agreement was not a land sale contract subject to ORS 93.905-.945. Instead, it was a "preliminary sales agreement" specifically excluded from the definition of a land sale contract in ORS 93.905(1). Although the Purchase Agreement names the parties and describes the property and payment terms, it lacks many other provisions normally found in a land sale contract, such as maintenance obligations, remedies in the event of default or destruction, and insurance. More importantly, it specifically states that Ionian is only "prepared to sell," not "sells" or "is selling" the property and requires the preparation of an "official real estate contract" on January 1, 2006, upon receipt of the balloon payment, and the "figures on this agreement will be incorporated in the real estate contract to reflect the outstanding balance as of 1 Jan 06." The Purchase Agreement is nothing more than an earnest money agreement providing for the later execution of a land sale installment contract. It contains sufficient essential terms to entitle the purchaser to specific performance. *See Ochs v. Albin*, 137 Or App 213, 903 P2d 906 (1995). However, it is not a land sale contract subject to ORS 93.910.

Second, Precision Seed argues that the Lease lacked consideration and/or should be rescinded due to a mutual mistake of fact, citing *Lesher v. Strid*, 165 Or App 34, 41-42, 996 P2d 988, 993 (2000). If Ionian was under a contract to sell the property to Mr. Kloft, then it could not lease the property to Precision Seed. According to Mr. Kloft, he would not have entered into the Lease had he known that the Purchase Agreement was still in full force and effect. To rescind

16 - FINDINGS AND RECOMMENDATIONS

the Lease, the rescinding party (Precision Seed) must provide a clear and unequivocal notice to

the other party (Ionian) promptly after discovering the basis for rescission.  *See Stovall v.*

*Publishers Paper Co.*, 284 Or 53, 57, 584 P2d 1375, 1377-78 (1978).  Precision Seed maintains

that it has done so through the allegations in its Amended Answer.

However, Ionian and Mr. Kloft did not enter into a land sale contract in January 2006 as

contemplated by the Purchase Agreement.  As a result, the Purchase Agreement expired and

either was replaced with or merged into the Lease.  Precision Seed challenges any termination of

the Purchase Agreement due to the lack of any writing signed by the parties as required by the

Statute of Frauds, ORS 41.580(e).  However, as discussed above, the Purchase Agreement was

merely an earnest money agreement.  An earnest money agreement may be rescinded or

superseded by an oral agreement without violating the Statute of Frauds.  *Dan Bunn, Inc. v.*

*Brown*, 285 Or 131, 146-47, 590 P2d 209, 217 (1979); *see also* 42 ALR3d 242 (1972).

Regardless, a material term of the Purchase Agreement was not performed, resulting in its

abandonment.  The parties' relationship converted to a month-to-month tenancy until May 2009

when Ionian and Precision Seed executed the Lease.  Skourtes Depo. (June 1, 2010), p. 25.

Because the parties did not execute the Lease based on any mutual mistake of fact as to the status

of the Purchase Agreement, no rescission remedy is available to invalidate the Lease.

Precision Seed also argues that the Lease is invalid for lack of consideration.  However, it

is undisputed that Precision Seed was in default under the Purchase Agreement as of May 2009

due to late and missing payments.  The Lease reduced the monthly payment and allowed

Precision Seed to avoid eviction, which is more than sufficient consideration.

17 - FINDINGS AND RECOMMENDATIONS

Accordingly, this court finds that the Lease, not the Purchase Agreement was valid and in effect at the time of the fire.

B. **Ionian as an Additional Insured**

The next issue is whether Ionian was an additional insured at the time of the fire. If it is, then Ionian is entitled to insurance proceeds equal to the cash value of the building. If not, then Precision Seed, as the lessee and named insured, is entitled to all of the insurance proceeds.[7]

Based on the evidence submitted before Precision Seed joined this case, this court concluded that Ionian was an additional insured. Precision Seed contests the admissibility of some of that evidence and submits additional evidence to support its claim that Precision Seed neither sought to obtain nor obtained insurance for Ionian.

1. **Terms of Lease**

The Lease requires Precision Seed to "furnish and pay for fire insurance on building and third party liability insurance, real estate taxes and all building maintenance" and repair "[a]ny damage to structure or building improvements, doors, plumbing, electrical, etc." within "sixty days of occurrence." Nothing in the Lease requires Precision Seed to make Ionian an additional insured. "In the absence of any agreement requiring him to do so, a tenant is not required to provide insurance protection for his landlord." *Yoshida v. Sec. Ins. Co. of New Haven, Conn.*, 145 Or 325, 336, 26 P2d 1082, 1086 (1933). Instead, the Lease places any damage to the

---

[7] The Lease requires Precision Seed to repair the damage to the building within 60 days after the fire. However, the Lease was terminated prior to the end of that 60-day period and Ionian has since sold the property. Thus, Precision Seed contends that it has no obligation to repair or to pay to Ionian the insurance proceeds equal to the cost of repair. Ionian responds that it has a claim against Precision Seed for damages due to its negligence in causing the fire. That dispute is not the subject of the pending motions.

building squarely on Precision Seed's shoulders, but ensures that Precision Seed will have insurance to pay for any obligatory repairs.

Ionian agrees that if the building was destroyed by fire, the parties intended that it would be repaired with the proceeds of the fire insurance policy. Construing the Lease to require Ionian to be an additional insured on that policy is consistent with that intent. However, the parties' intent is not relevant unless the contract language is unclear. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019, 1021 (1997) (*en banc*). Here the language is clear and unequivocal that Precision Seed must "furnish and pay for fire insurance," but does not state or require that the fire insurance policy must protect both the interests of the tenant, Precision Seed, and the landlord, Ionian. In construing a document, this court cannot "insert what has been omitted" in order to add the requirement sought by Ionian. ORS 42.230.

### 2. **Estoppel/Waiver Defense**

To support its argument, Ionian alleges in its First Affirmative Defense that Precision Seed represented that it would not only insure the building, but also would name Ionian as an additional insured. As a result, Ionian claims that Precision Seed is estopped or has waived its right to make any claims to the proceeds of such insurance coverage. In support, it relies on Mr. Skourtes' testimony that he insisted that Precision Seed obtain insurance to protect Ionian's investment, as evidenced by the triple net Lease. Skourtes Depo. (May 10, 2011), pp. 123-25. He also states that he received a declaration page around May of every year (from December 2004 until 2009) confirming that the building was insured and "showing Ionian's interest." Skourtes Aff. (docket #34), ¶ 6. Although that past practice included one year under the Purchase Agreement (May 2005), it is still relevant.

However, the only document submitted by Ionian to confirm that supposed practice is the Certificate of Insurance issued by Country Mutual on June 29, 2005, to Ionian as the "Certificate Holder" which lists the policies issued to Precision Seed. Carey Aff. (docket # 32), Ex. 2. It does not state that Ionian is an additional insured. By stating that it is "for information only and does not amend, alter or extend any coverage provided by policies listed," it does not make Ionian an additional insured. King Depo. (August 4, 2011), pp. 150-52; *Am. Int'l Speciality Lines Ins. Co. v. Kindercare Learning Centers, Inc.*, Nos. 07-642-KI & 07-978-KI, 2010 WL 3057808, at *3 n1 (D Or Aug. 2, 2010), citing *Baylor v. Continental Cas. Co.*, 190 Or App 25, 34, 78 P3d 108, 113 (2003). It is simply proof that the named insured (Precision Seed) actually has insurance.

To confirm that Ionian was not an additional insured on past policies, Precision Seed has submitted the declarations pages for two other policies issued by Country Mutual to Precision Seed for 2005 (January 8, 2005 - January 8, 2006) and 2006 (January 8, 2006 - January 8, 2007). Bragg Decl. (docket #124), Exs.15 and 16. Neither of those policies list Ionian as an additional insured.

Based on the evidence submitted, it is plainly evident that Mr. Skourtes misinterpreted the Certificates of Insurance which he received every year. Those certificates do confirm that Precision Seed purchased insurance, but do not state or prove that Ionian was named as an additional insured. Therefore, Ionian has no evidence of any past practice to support its estoppel defense.

Furthermore, Ionian can point to no specific representation made by Mr. Kloft to Mr. Skourtes to name Ionian as an additional insured in 2009. The only conversations between

20 - FINDINGS AND RECOMMENDATIONS

them in 2009 concerned Mr. Skourtes' insistence that Precision Seed reinstate the lapsed

insurance.  After Mr. Skourtes realized that Ionian was not named an additional insured, he

called Mr. King's office which then communicated with Country Mutual.  There is no evidence

that Mr. Kloft made any representation directly to Ionian in that regard.

Because no evidence supports an estoppel or waiver defense, Precision Seed should be

granted summary judgment against Ionian's First Affirmative Defense.

### 3.  Mr. King's Actual or Apparent Authority

Ionian's remaining argument that it was an additional insured is based on Mr. King's

conduct as an agent of Country Mutual, as discussed in the October 5 O&O.  Precision Seed

contends that although Mr. King was Country Mutual's captive agent, he was not Precision

Seed's agent.  *Lewis-Willamson v. Grange Mut. Ins. Co.*, 179 Or App 491, 495-96, 39 P3d 947,

949 (2002) (a captive agent is not the insured's agent).  Thus, he could not bind Precision Seed to

the modification of the insurance policy requested by Mr. Skourtes without the consent of

Mr. Kloft.  Pursuant to the policy, the "first Named Insured shown in the Declarations is

authorized to make changes in the terms of this policy with [Country Mutual's] consent."

Insurance policy, p. 53, Common Insurance Policy Conditions, ¶ B.  Mr. Kloft denies ever

requesting or giving his consent to Mr. King to make Ionian an additional insured.  Kloft Decl.

(docket #94), ¶ 10.  Thus, even assuming that Mr. King had the actual or apparent authority to

bind Country Mutual to insure Ionian, Precision Seed argues that he did not have the authority to

make Ionian an additional insured absent consent from Precision Seed to do so.

In response, Ionian points to evidence that Mr. Kloft, on behalf of Precision Seed, did, in

fact, give Mr. King that authority.  That evidence is the August 25, 2009 email from Linda in

21 - FINDINGS AND RECOMMENDATIONS

Mr. King's office to Country Mutual which states that "[t]he insured called in with the following changes," namely to list Ionian as an additional insured. Carey Aff. (docket #32), ¶ 4 & Depo. Ex. 8. Although Precision Seed seeks to strike this email as hearsay, it is admissible as a business record. Furthermore, Mr. King testified that he had obtained Precision Seed's approval to add Ionian as an additional insured. King Depo. (June 1, 2010), pp. 29-30. But even if Mr. King was unclear as to how that consent was obtained and communicated to Country Mutual, the email to Country Mutual alone is sufficient to dispute Mr. Kloft's testimony.[8]

Although this court previously held that Ionian was named an additional insured on the policy, Precision Seed has submitted sufficient evidence to create a genuine issue of material fact on this issue. Therefore, a jury must resolve whether Precision Seed consented to Ionian being named an additional insured on the policy.

### C. Motor Control System

The funds interpled by Country Mutual include $12,750.00 for a Siemens motor control system. Precision Seed contends that Ionian has no claim to those funds for several reasons. First, even if Ionian is an additional insured as to the building, it was not an additional insured as to personal property within the building. Second, it argues that this system was part of the fixtures of the building to be sold under the Purchase Agreement and thus included in the building coverage. Skourtes Depo. (June 1, 2010), p. 51. Third, even if it was not a fixture, Precision Seed claims that it purchased the Siemens motor control system on October 18, 2005,

---

[8] If Mr. Kloft did not give any consent to Mr. King's office for Ionian to become an additional insured, but Mr. King's office did so anyway, then Precision Seed has a potential claim against Mr. King.

which was not destroyed by the fire and is in use today at a different facility.[9]  Kloft Decl.

(docket #94), ¶ 16 & Exs. 8-9.

Ionian responds that Country Mutual's policy insured the Siemens motor control system

separately, whether or not it was a fixture and, in any event, it was not a fixture because it was

not attached to the building and could be pulled out and sold separately.  Skourtes Depo.

(May 10, 2011), pp. 127-28.  Even if Precision Seed bought a Siemens motor control system that

was not destroyed, as it claims, Ionian has submitted evidence that it owned another Siemens

motor control system which was already installed in the building in 2004 and destroyed in the

fire.  Skourtes Decl. (docket #93), ¶ 9; Skourtes Depo. (May 10, 2011), p. 45.

Based on the record, this court cannot ascertain who owned the motor control system that

was destroyed or whether it was a fixture and included in the building coverage, as opposed to

being separately insured.  Thus, Precision Seed is not entitled to summary judgment on this

crossclaim.

**D.  Rent**

Precision Seed seeks summary judgment against Ionian's First Crossclaim for unpaid rent

in the appoximate amount of $40,000.00 through the termination of the Lease on September 22,

2009.  This motion is premised on the theory that Precision Seed owes no rent to Ionian because

the Purchase Agreement was in effect at the time of the fire.  However, this court has found that

the Lease, rather than the Purchase Agreement, was in effect at the time of the fire.  Accordingly,

Precision Seed owes unpaid rent through the date Ionian terminated the lease, and Precision

Seed's motion for summary judgment against Ionian's First Crossclaim should be denied.

---

[9]  If true, then Precision Seed also has no claim to this portion of the insurance proceeds.

### E.  Cleanup Costs

Precision Seed seeks summary judgment against Ionian's Second Crossclaim for cleanup costs of $20,000.00.  That amount is the full cleanup cost of $30,000.00 less the $10,000.00 from the insurance proceeds interpled by Country Mutual.  Precision Seed does not deny that Ionian spent $30,000.00 to clean up the property after the fire.  Whether the Purchase Agreement or the Lease was in effect at the time of the fire, Ionian is entitled to be reimbursed for these costs.

Ionian concedes that this court has no jurisdiction over its Second Crossclaim against Ionian for the uninsured part of the cleanup costs ($20,000.00), but contends that the court can award it the insured portion of $10,000.00 deposited by Country Mutual with the court. Precision Seed's only response is that the $10,000.00 should be paid to it first and then it will reimburse Ionian.  Given that Precision Seed concedes that $10,000.00 of the cleanup proceeds are payable to Ionian and relinquishes its rights to that sum, Ionian should be paid $10,000.00 from the interpled funds as partial reimbursement of its cleanup costs, without waiving any right by Precision Seed to challenge Ionian's entitlement to recover the remaining $20,000.00 in cleanup costs.

Thus, Precision Seed's motion for summary judgment against the Second Crossclaim should be denied, but Ionian should be granted partial summary judgment on its Second Crossclaim in the sum of $10,000.00, with the remainder of this claim dismissed for lack of subject matter jurisdiction.

### F.  Conversion Claim

Precision Seed seeks summary judgment on its conversion claim for the value of all of the scrap metal that Ionian gave to GRS Erection as part of its agreement to remove the debris.  The

scrap metal was sold to Cherry City Metals for $15,013.27. Pursuant to the Lease, Ionian had a landlord's lien under ORS 87.162, but it did not foreclose on that lien before selling the scrap metal. Therefore, Precision Seed seeks an award of $15,013.27 against Ionian for conversion.

The problem is that as a lessee, Precision Seed did not own the building and only owned the equipment and machinery in the building. Precision Seed has not yet established what specific personal property it owned that was not part of the building that Precision Seed allegedly converted or its value. To support its claim that the majority of the scrap metal was its equipment and machinery, Precision Seed has submitted photographs of the damage after the fire. Kloft Decl. (docket #94), Ex. 7. However, it is impossible for this court to identify what particular scrap metal in these photographs is Precision Seed's property, as opposed to Ionian's property, and its worth, if anything.

Moreover, Mr. Skourtes states that when he asked Mr. Kloft if he intended to remove all debris and scrap, Mr. Kloft declined due to insufficient funds and never contended that he or Precision Seed had any interest in any the scrap metal on the property. Skourtes Decl. (docket #93), ¶ 8. As a result, Ionian paid for the cleanup which occurred nearly a year later. Needless to say, Mr. Kloft recalls that in the first couple of months after the fire, he told Mr. Skourtes not to remove any scrap because its ownership was in limbo and never said that Precision Seed would not clean up the property. Kloft Decl. (docket #109), ¶¶ 2-3. This issue of fact concerning possible abandonment of the scrap metal bars summary judgment on this claim.

///

///

///

25 - FINDINGS AND RECOMMENDATIONS

### G.  Conclusion

Because the Lease, not the Purchase Agreement, was in effect at the time of the fire and due to material issues of fact as to whether Ionian was an additional insured, Precision Seed should be granted summary judgment only against Ionian's First and Second Affirmative Defenses.

## II.  Ionian's Motion

### A.  Entitlement to Policy Proceeds

In addition to seeking summary judgment against some of Precision Seeds' crossclaims for lack of subject matter jurisdiction as discussed above, Ionian seeks summary judgment against all of Precision Seed's crossclaims.  Since this motion involves the same issues as Precision Seed's motion, the above findings apply to it as well.  Accordingly, Ionian's motion should be denied as to the Precision Seed's First Crossclaim for unjust enrichment (alleging that Ionian is not an additional insured) and Second Crossclaim for conversion and granted as to its Third Crossclaim for breach of the Purchase Agreement and Fourth Crossclaim for rescission of the Lease.

### B.  Crossclaims

Ionian also seeks summary judgment on its two cross-claims for rent and cleanup costs. As discussed above, a factual dispute bars complete summary judgment to either party on either crossclaim, but Ionian is entitled to partial summary judgment as to $10,000.00 of the funds interpled by Country Mutual as partial reimbursement for its cleanup costs.

///

///

26 - FINDINGS AND RECOMMENDATIONS

## RECOMMENDATIONS

Precision Seed's Motion for Partial Summary Judgment (docket #91) should be GRANTED against Ionian's First (Estoppel/waiver) and Second (Real Party in Interest) Affirmative Defenses and otherwise DENIED.

Ionian's Motion for Summary Judgment (docket #100) should be GRANTED in part as to its Second Crossclaim (Cleanup Costs) in the amount of $10,000.00, GRANTED against ¶ 56 of Precision Seed's Third (Breach of the Purchase Agreement) and Fifth (Fraud) Crossclaims for lack of subject matter jurisdiction and against the Third (Breach of the Purchase Agreement) and Fourth (Rescission of the Lease) Crossclaims on the merits, and otherwise DENIED.

In addition, the remainder of Ionian's Second Crossclaim (Cleanup Costs) should be dismissed for lack of subject matter jurisdiction.

As a result, the remaining claims for trial are Precision Seed's First (Unjust Enrichment) and Second (Conversion) Crossclaims, Ionian's Third (Statute of Frauds) and Fourth (Statute of Limitations) Affirmative Defenses, and Ionian's First Crossclaim (Unpaid Rent).

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due October 14, 2011.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

///

///

///

///

27 - FINDINGS AND RECOMMENDATIONS

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED this 27th day of September, 2011.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

28 - FINDINGS AND RECOMMENDATIONS