IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

IONIAN CORP., an Oregon corporation,

        Plaintiff,

  v.

COUNTRY MUTUAL INSURANCE
COMPANY, a foreign corporation,

        Defendant/ Interpleader
        Plaintiff,

  v.

IONIAN CORP., an Oregon corporation,
PRECISION SEED CLEANERS INC., an
Oregon corporation,

        Interpleader Defendants.

No. 3:10-cv-0199-ST

ORDER

HERNANDEZ, District Judge:

       Magistrate Judge Stewart issued a Findings and Recommendation (#125) on September

1 - ORDER

27, 2011, in which she recommends the Court (1) grant in part and deny in part Precision Seed's motion for summary judgment, (2) grant in part and deny in part Ionian Corporation's motion for summary judgment, and (3) dismiss several claims for lack of subject matter jurisdiction.

Precision Seed timely filed objections to the Findings and Recommendation. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1); Dawson v. Marshall, 561 F.3d 930, 932 (9th Cir. 2009); United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

I have carefully considered Precision Seed's objections and conclude that the objections do not provide a basis to modify the Findings and Recommendation. I have also reviewed the pertinent portions of the record *de novo* and find no error in the Magistrate Judge's Findings and Recommendation.

Magistrate Judge Stewart carefully explained the procedural posture of the case, indicating that defendant/interpleader plaintiff Country Mutual was no longer a party and that the central issue remaining is the entitlement, as between Ionian and Precision Seeds, to insurance proceeds from an insurance policy purchased by Precision Seeds from Country Mutual in regard to a building that Precision Seeds had purchased or leased from Ionian. The pending claims and motions are listed at pages 3-4 of the Findings & Recommendation.

The recommended rulings on the motions are based on underlying determinations Magistrate Judge Stewart made as to several issues, two of which form the basis of Precision Seed's objections: (1) the determination that a genuine issue of material fact exists regarding

2 - ORDER

whether Ionian was an additional insured on the insurance policy; and (2) the determination that the Lease, and not the Purchase Agreement, governed the relationship between the parties at the time of the fire which destroyed the building.

I. Additional Insured

In discussing this issue, Magistrate Judge Stewart first found that the language of the Lease was clear and unequivocal in both requiring Precision Seed to furnish and pay for fire insurance and in not requiring that Ionian, as landlord, be protected as an additional insured. Findings & Rec. at pp. 18-19. Next, she rejected Ionian's argument that Precision Seed was estopped from making, or had waived its right to make, a claim to the proceeds of the insurance coverage. Id. at ¶¶ 19-21.

Finally, she considered the authority of King, Country Mutual's insurance agent. Id. at pp. 21-22. As Magistrate Judge Stewart indicated, even assuming King had actual or apparent authority to bind Country Mutual to insure Ionian, the question was whether there was consent from the named insured Precision Seed to make Ionian an additional insured. Id. at p. 21. Magistrate Judge Stewart then cited to evidence in the record that she found capable of creating an issue of fact on that question:

> That evidence is the August 25, 2009 email from Linda in Mr. King's office to Country Mutual which states that "[t]he insured called in with the following changes," namely to list Ionian as an additional insured. Carey Aff. (docket #32), ¶ 4 & Depo. Ex. 8. Although Precision Seed seeks to strike this email as hearsay, it is admissible as a business record. Furthermore, Mr. King testified that he had obtained Precision Seed's approval to add Ionian as an additional insured. King Depo. (June 1, 2010), pp. 29-30. But even if Mr. King was unclear as to how that consent was obtained and communicated to Country Mutual, the email to Country Mutual alone is sufficient to dispute Mr. Kloft's testimony.

Id. at p. 22.

3 - ORDER

In its objections, Precision Seed argues that Magistrate Judge Stewart erred in concluding that the email from "Linda" to Country Mutual is admissible as a business record. Precision Seed argues that the email is inadmissible because there is no evidence from a Country Mutual records custodian, no evidence as to when the document was made in relation to the statements it purports to record, no evidence that "Linda" was a person with knowledge of the statements in the email, and no evidence that it is Country Mutual's regular business practice to record conversations with insureds regarding the scope of coverage. See Fed. R. Evid. 803(6) (governing admissibility of "records of regularly conducted activity").

While I agree with Precision Seed that the record could have been more fully developed in support of the admissibility of the email under Rule 803(6), Magistrate Judge Stewart did not rely entirely on the email in finding that there is an issue of fact as to whether Ionian was an additional insured under the policy. Notably, Magistrate Judge Stewart cited to King's deposition testimony where he states that the email was in accord with his recollection of what happened and, importantly, that he had Precision Seed's approval to add Ionian and to make that request to Country Mutual. June 1, 2010 King Depo. at pp. 33-34, 28-30 (attached to Carey Decl., dkt #32). Given that Magistrate Judge Stewart discussed the additional insured issue in the context of analyzing Precision Seed's motion for summary judgment, all inferences must be taken in the light most favorable to the non-moving party, meaning Ionian. Because, viewed in that light, King's testimony is that he had consent from Precision Seed to add Ionian as an additional insured, King's testimony creates an issue of fact on the issue. Magistrate Judge Stewart's finding is not erroneous.

/ / /

4 - ORDER

II.  Purchase Agreement and Lease

The history of the parties' relationship regarding the property is recited at pages 5 through 9 of the Findings & Recommendation.  That relationship began in 2004 with a written memorandum referred to as the "Purchase Agreement."  Later, in May 2009, they entered into a Lease.  Entitlement to the insurance proceeds depends not only on whether Ionian was an additional insured, but also on whether, at the time of the fire, it had sold the property under the Purchase Agreement, or was a landlord under the Lease.

Precision Seed made three arguments that the Purchase Agreement was valid and in effect at the time of the fire:  (1) that the Purchase Agreement was a land sale contract under Oregon statute and thus, any nonjudicial cancellation of the Purchase Agreement must be preceded by a written notice of default which Ionian did not send and thus, the Purchase Agreement is still valid; (2) that the Lease should be rescinded because of mutual mistake; and (3) that the Lease lacked consideration.

For the reasons explained in the Findings & Recommendation, Magistrate Judge Stewart found that the Purchase Agreement was not a land sale contract subject to Oregon's Forfeiture Under Land Sale Contract Law, Oregon Revised Statutes §§ (O.R.S.) 93.905 - 93.945, but was instead a "preliminary sales agreement" akin to an earnest money agreement "providing for the later execution of a land sale installment contract."  Findings & Rec. at p. 16.  Thus, it was not subject to the notice of default requirements for land sale contracts, making Ionian's failure to send such notice inconsequential as to the validity of the Purchase Agreement.  Id. at pp. 15-16.  Precision Seed objects to this finding.

The Purchase Agreement provided as follows:

5 - ORDER

> We are prepared to sell you the above property under the following terms
>
> Sell price $330,000.  Monthly payments beginning, 1April 05 including interest and principal of $3,747.08 for 120 month[s], 6½% interest per annum on unpaid balance.  Payments first nine month[s] $2,500 per month.  Balloon payment due 1 Jan 06, $11,224.00 plus interest of 305.69 which represents short fall between $3,747.08 versus actual payment of $2.500.
>
> Building sold as is condition.  Possession 1 Jan 05.  Proration of taxes and insurance as of 1Jan 05.  Six mos real estate taxes thru 30 June 05[.]  $676.48 six mos fire and liability insurance thru 30 June 05. $1190.00.  First months payment $2,500.  Total due when this document is signed by both parties, $4,366.48.
>
> The official real estate contract will be prepared 1 January 06 upon receipt of balloon payment.  The figures on this agreement will be incorporated in the real estate contract to reflect the outstanding balance as of 1 Jan 06.
>
> Seller warrants that Board of Directors have authorized this agreement.

Ex. 1 to Kloft Decl. (dkt #94).  The document was signed by John Skourtes on behalf of Ionian Corp., designated as the seller, and Paul Kloft as buyer.[1]

The statute provides that a "contract for transfer or conveyance of an interest in real property" does not include "earnest money or preliminary sales agreements, options or rights of first refusal."  O.R.S. 93.905(1).  Thus, agreements that are in the nature of earnest money, preliminary, or otherwise unconsummated transfers of an interest in property are not subject to the laws regarding forfeiture of a land sale contract.

Magistrate Judge Stewart relied on two aspects of the document to find that it was not a final land sale contract.  First, she noted that it lacked provisions normally found in such contracts such as maintenance obligations, remedies in the event of default or destruction, and insurance.  Second, and "[m]ore importantly," she explained that the document itself provided

---

[1] Kloft is the owner and operator of Precision Seed.

6 - ORDER

that it was not a final real estate contract because it expressly stated that Ionian was only "prepared to sell," it required the preparation of an "official real estate contract" at a future date and upon receipt of the balloon payment, and it also expressly stated that the "figures on this agreement will be incorporated in the real estate contract to reflect the outstanding balance as of 1 Jan 06." Findings & Rec. at p. 16 (quoting Purchase Agreement).

Precision Seed contends that the finding was in error because the Purchase Agreement was not an agreement to enter into a contract to transfer property at some point in the future; instead, it was an agreement for monthly payments with an immediate transfer of possession. Precision Seed notes that monthly payments were to begin in April 2005, before the "official real estate contract" was to be prepared in 2006, and that it provided for possession as of January 1, 2005. Precision Seed further argues that the "official real estate contract" was nothing more than a formality for recording purposes and could not have provided anything more regarding possession or payments because Kloft already had possession and Ionian already had the right to payments. Therefore, Precision Seed argues, it was not merely a preliminary agreement to transfer property in the future, it <u>was</u> the agreement for the transfer of property. Finally, Precision Seed argues that the "provisions normally found in a land sale contract" referred to by Magistrate Judge Stewart as missing in this Purchase Agreement, are actually implied by law, and therefore, the fact that they are not in the Purchase Agreement is of no significance.

The Magistrate Judge did not err. Even if provisions regarding default or maintenance were in the Purchase Agreement, the language of the Purchase Agreement itself creates only a preliminary agreement to sell with the actual sale occurring after the balloon payment was made and upon the preparation of the official real estate contract. Although the parties refer to

themselves as the buyer and the seller, these terms and the fact that there were monthly payments and immediate possession are not determinative of the nature of the relationship. Both the monthly payments and immediate possession are consistent with a leasehold interest as well as a transfer of beneficial interest in the property. Thus, those provisions do not control the nature of the relationship created by the Purchase Agreement. The references to being "prepared" to sell, the fact that a balloon payment was due one year later and that this would trigger the preparation of the actual sales contract, and the fact that the real estate contract would reflect the outstanding balance as of January 1, 2006, indicate that the actual sale of the property did not occur with this Purchase Agreement but was instead an act to occur in the future..

 Precision Seed next argues that the Lease is unenforceable because it lacked consideration. Magistrate Judge Stewart also rejected this argument. She explained that because a land sale contract was never entered into in January 2006 as contemplated by the Purchase Agreement, the Purchase Agreement expired and was either replaced with or merged into the Lease. Magistrate Judge Stewart explained that regardless of whether there was a signed writing evidencing the termination of the Purchase Agreement, a material term of the Purchase Agreement was not performed resulting in its abandonment. At that point, she found, the parties' relationship converted to a month-to-month tenancy until May 2009 when Ionian and Precision Seed executed the Lease. Because, Magistrate Judge Stewart found, the parties did not execute the Lease based on any mutual mistake of fact as to the status of the Purchase Agreement, no rescission remedy is available to invalidate the Lease. Findings & Rec. at p. 17.

 As to the consideration argument, Magistrate Judge Stewart noted that it was undisputed that Precision Seed was in default under the Purchase Agreement as of May 2009 due to late and

8 - ORDER

missing payments. Because the Lease reduced the monthly payment and allowed Precision Seed to avoid eviction, there was more than sufficient consideration.

Precision Seed argues that Magistrate Judge Stewart erred in several respects in regard to findings made in support of her conclusions regarding the consideration and mutual mistake issues. Precision Seed contends that the preparation of the official real estate contract in January 2006 was not a necessity for the Purchase Agreement to be completely performed and the property to be conveyed to Kloft and further, there is no language in the Purchase Agreement suggesting that the Purchase Agreement would expire if that official contract was not prepared. Additionally, Precision Seed argues that Magistrate Judge Stewart's construction would result in a forfeit of all the payments Kloft made pursuant to the Purchase Agreement without due process of law or a clear agreement and understanding of the risk of that loss. Therefore, Precision objects to the finding that the Purchase Agreement expired by its terms.

Given the several prefatory-type terms in the Purchase Agreement, and understanding it as a preliminary agreement to sell which was not yet executed, the preparation of the official real estate contract is a material term required to actualize the parties' intent to sell the property and to transfer the interest in the property. This is based on the four corners of the Purchase Agreement and its unambiguous language. Additionally, the payments tendered by Kloft during the time the Purchase Agreement was in effect were not forfeited as a result of the expiration of the Purchase Agreement because Kloft and Precision Seeds were using the property that entire period of time and the payments may be understood as either payments made toward a later purchase (which did not occur), or as lease payments if the sale was not completed. The finding that the Purchase Agreement expired was not erroneous.

9 - ORDER

Next, Precision Seed argues that Magistrate Judge Stewart erred by finding that the Purchase Agreement was replaced by or merged with the Lease. Precision Seed argues that because the Purchase Agreement was a contract between Ionian and Kloft, it could not have been replaced by the Lease which was a contract between Ionian and Precision. Precision Seed also makes various arguments regarding the idea of merger.

What Precision Seed fails to appreciate, however, is that with the expiration of the Purchase Agreement in 2006 after the official land sale contract was not prepared, Ionian no longer had an effective agreement to sell the property to Kloft in the future. Instead, Ionian and Kloft had a month-to-month tenancy with the terms of that tenancy (namely, the amount of rent to be paid each month) provided by the Purchase Agreement and the March 2006 Installment Note. There is no barrier to the replacement of that arrangement with a Lease entered into by Precision Seed instead of Kloft. There is no need to further address the merger-related arguments because given that the Purchase Agreement had expired, it is sufficient to consider it to have been eventually replaced by the Lease.

Precision Seed argues that Magistrate Judge Stewart erred in her finding that there was consideration by a reduction in the monthly payment and in avoiding eviction. Precision Seed argues that the Lease did not release Kloft of his obligations under the Purchase Agreement or the Installment Note entered in March 2006; rather, the Lease only added to his pre-existing obligations and thus, there were no reduced payments. I disagree. The Installment Note does not impose a contractual obligation on Kloft independent of the Purchase Agreement and thus, with the expiration of the Purchase Agreement, there was no continuing obligation imposed by the Purchase Agreement upon Kloft. Therefore, the rent payments called for by the Lease did not

10 - ORDER

simply add to Kloft's pre-existing obligations.

Additionally, entering the Lease to avoid eviction is sufficient consideration. Precision Seed was the tenant on the property and the record is undisputed that no payments had been made for several months prior to Skourtes telling Kloft that Precision Seed would have to vacate the premises. Skourtes agreed to forego evicting Precision Seed and agreed to lesser payments than due under the existing tenancy in exchange for Precision Seed's agreement to enter the Lease, which allowed Precision Seed to make reduced payments for a period of three years. This was sufficient consideration.

III. Rent

Ionian's first crossclaim seeks $40,000 in rent. Magistrate Judge Stewart recommended that Precision Seed's motion for summary judgment against this crossclaim be denied because it was premised on Precision Seed's argument that the Purchase Agreement, not the Lease, was in effect at the time of the fire and thus, it owed no rent. Findings & Rec. at p. 23. In its motion, Precision Seed had alternatively argued that Ionian waived its right to rent based on Skourtes's September 22, 2009 letter to Kloft in which he stated that because the structure had been destroyed by fire, the Lease was terminated and that the "[o]nly outstanding liability is cleanup of the site which should be the responsibility of the insurance carrier, Country Mutual. Plus the recovery of insurance covering the structure." Ex. 5 to Kloft Decl. (dkt #94). Precision Seed argues that Skourtes's failure to mention rent as an outstanding liability waived Ionian's right to seek rent. Magistrate Judge Stewart did not address the waiver argument.

Both parties indicate that this Court lacks subject matter jurisdiction over the rent claim because, for the reasons Magistrate Judge Stewart discussed in regard to several of Precision

11 - ORDER

Seed's claims, the rental payments owed are unrelated to the rights to the insurance proceeds. See Findings & Rec. at pp. 10-12 (discussing subject matter jurisdiction over crossclaims under Federal Rule of Civil Procedure 13(g)).  I agree that the claim for unpaid rent does not relate to the insurance proceeds which is the "property that is the subject matter of the original action" and thus, this Court lacks subject matter jurisdiction over Ionian's first crossclaim for unpaid rent.

## CONCLUSION

The Court ADOPTS Magistrate Judge Stewart's Findings and Recommendation [#125] and, therefore,

(1) Precision Seed's motion for summary judgment [#91] is GRANTED against:

    (a)  Ionian's first affirmative defense (estoppel/waiver); and

    (b)  Ionian's second affirmative defense (real party in interest); and

is otherwise DENIED;

(2) Ionian's motion for summary judgment [#100] is GRANTED in favor of Ionian as to:

    (a)  $10,000 of Ionian's second crossclaim (cleanup costs);

(3)  Ionian's motion for summary judgment [#100] is GRANTED against:

    (a)  ¶ 56 of Precision Seed's third crossclaim (breach of the Purchase Agreement) due to lack of subject matter jurisdiction and the remainder of Precision Seed's third crossclaim (breach of the Purchase Agreement), on the merits;

    (b) Precision Seed's fifth crossclaim (fraud) due to lack of subject matter jurisdiction; and

    (c) Precision Seed's fourth crossclaim (rescission of the Lease) on the merits; and

is otherwise DENIED;

12 - ORDER

(4) Ionian's first crossclaim (unpaid rent) and remainder of its second crossclaim (cleanup costs) are dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.

DATED this     2nd     day of    December         , 2011.


 /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

13 - ORDER