IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IONIAN CORP., an Oregon corporation,                   No. 03:10-cv-00199-HZ

        Plaintiff,

    v.

COUNTRY MUTUAL INSURANCE                              OPINION & ORDER
CORPORATION, a foreign corporation,

        Defendant/
        Interpleader Plaintiff

    v.

IONIAN CORP., an Oregon corporation,
PRECISION SEED CLEANERS, INC.,
an Oregon corporation,

        Interpleader Defendants.

Gordon T. Carey
Attorney at Law
1020 S.W. Taylor Street, Suite 375
Portland, Oregon 97205

        Attorney for Plaintiff

1 - OPINION & ORDER

Frederick M. Millard
Douglas M. Bragg
419 5th Street
Oregon City, Oregon 97045

     Attorneys for Interpleader Defendant Precision Seed Cleaners, Inc.

HERNANDEZ, District Judge:

     Following entry of Judgment in favor of Precision Seed Cleaners and against Ionian

Corporation, both parties appealed certain rulings to the Ninth Circuit.  In an unpublished

Memorandum Disposition filed May 12, 2014, that Court affirmed in part, reversed in part, and

remanded the case back to this Court.  Ionian Corp. v. Country Mut. Ins. Co., 572 F. App'x 513

(9th Cir. 2014).  One of the issues on appeal was this Court's denial of Ionian's motion to amend

its crossclaims against Precision Seed to assert a new claim of unjust enrichment.  The Ninth

Circuit reversed that ruling and remanded to this Court to grant Ionian leave to add the unjust

enrichment crossclaim.  The mandate issued on June 9, 2014.

     On July 11, 2014, Ionian filed its amended pleading asserting its unjust enrichment

crossclaim against Precision Seed.[1]  Precision Seed moved against the crossclaim.  At an October

8, 2014 hearing, I granted Precision Seed's motion in part and denied it in part.  See Oct. 8, 2014

Min. Ord. [ECF 229].  I ordered Ionian to file an amended crossclaim, which it did on October

---

    [1] Even before this case went up to the Ninth Circuit, I referred to its "somewhat tortured procedural history."  Mar. 5, 2012 Op. & Ord. at 2 [ECF 149] (stating the case, "which began as a breach of contract case involving an insurance policy issued by defendant Country Mutual Insurance Company, has a somewhat tortured procedural history" and explaining procedural history up to that date).  As a result of the procedural posture, the crossclaim Ionian filed on July 11, 2014 is contained within a pleading entitled "Ionian's Answer to Country Mutual Insurance Company's Interpleader, Answer to Amended Cross-Claims of Precision Seed and Amended Cross-Claims Against Precision Seed." ECF 219.

16, 2014.[2]

Precision Seed filed a responsive pleading on October 27, 2014.[3]  ECF 232.  Ionian now

moves to strike, for a more definite statement as to, or for judgment on the pleadings regarding,

some of the allegations and affirmative defenses asserted in Precision Seed's responsive pleading.

For the reasons explained below, I grant the motion in part and deny it in part.

I.  New/Amended Unjust Enrichment Crossclaim

In its October 27, 2014 Answer, Precision Seed brings an unjust enrichment crossclaim

against Ionian.  Oct. 27, 2014 Ans. at ¶¶ 25-49.  Prior to the filing of the October 27, 2014

Answer, Precision Seed's operative pleading was its Answer filed on May 24, 2011, entitled

"Interpleader Defendant Precision Seed Cleaners, Inc.'s First Amended Answer to Interpleader,

and Cross-Claims."  ECF 87.  There, Precision Seed brought five crossclaims against Ionian.  Id.

After summary judgment motions were resolved, only the unjust enrichment and conversion

crossclaims remained at issue.  On July 17, 2012, I granted Precision Seed's Second Motion for

Partial Summary Judgment which effectively granted summary judgment to Precision Seed on its

unjust enrichment crossclaim against Ionian.[4]  Following that ruling, I granted Precision Seed's

---

[2]  This pleading bears the title "Answer to Amended Cross-Claims and Corrected
Amended Cross-Claim."  ECF 231.

[3]  Precision Seed's pleading bears the title "Answer to Country Mutual Insurance
Company's Interpleader, Cross-Claims to Ionian and Answer to Corrected Amended Cross-Claim
from Ionian Corp."  ECF 232.

[4]  At issue in the motion was whether Ionian was limited to liability coverage only, even
assuming it was an "additional insured."  Because I agreed with Precision Seed, Ionian was no
longer entitled to the insurance proceeds which meant Precision Seed prevailed on its unjust
enrichment crossclaim.  Precision Seed recognized this when it noted, in its subsequent motion to
dismiss the remaining conversion crossclaim, that due to the summary judgment ruling on the
"additional insured" issue and the dismissal of the conversion crossclaim, "there are no other

3 - OPINION & ORDER

unopposed motion to dismiss its conversion crossclaim.  Final Judgment in Precision Seed's favor was entered on August 29, 2012.

Several of the allegations in the October 27, 2014 Answer's crossclaim are identical to the crossclaim allegations in the May 24, 2011 Answer.  Many of the allegations, however, are new. Oct. 27, 2014 Ans. at ¶¶ 25-37, 38-49.  Generally, they raise issues concerning the appropriate distribution of the policy proceeds.  Id.

Pursuant to Federal Rules of Civil Procedure 12(e) and (f), Ionian moves to strike, or for a more definite statement, several of the allegations in support of the new/amended unjust enrichment crossclaim brought by Precision Seed in its October 27, 2014 Answer.   I grant the motion.  Additionally, I strike all the allegations asserted by Precision Seed that were not in its May 24, 2011 Answer for the reason that Precision Seed did not have leave to amend its crossclaims.

The crossclaims brought by Precision Seed which survived summary judgment were either decided in Precision Seed's favor (the unjust enrichment crossclaim) or voluntarily dismissed by Precision Seed (the conversion claim).  Before Judgment was entered, Precision Seed did not seek leave to amend its crossclaims before this Court.  Other than contending that this Court erred in concluding that Ionian owned the warehouse at the time of the fire, Precision Seed pursued no issue related to its crossclaims before the Ninth Circuit.  The remand from the Ninth Circuit was limited to two issues: (1) granting Ionian leave to add a crossclaim for unjust enrichment; and (2) determining each parties' insured financial interest in the proceeds and

---

issues currently pending between the parties[.]"  ECF 192 (Precision Seed's Unopp. Mtn. to Dismiss) at 2.

awarding them accordingly.  572 F. App'x 513.  Precision Seed has not requested leave to amend its crossclaims since the Ninth Circuit remanded the case to this Court.

While the parties' pleadings are technically answers to the interpleader claim, no claims remain in the case other than the only claim the Ninth Circuit ordered be allowed:  Ionian's unjust enrichment claim against Precision Seed.  Thus, any amendment to the allegations answering the interpleader claim or any amendment by Precision Seed to its previously-asserted crossclaims, is inconsistent with the procedural posture of the case and the Ninth Circuit's limited remand issues. Therefore, I strike all the allegations in support of the new/amended crossclaim Precision Seed brings in its October 27, 2014 Answer to the extent the allegations vary from the previously-adjudicated unjust enrichment crossclaim brought in the May 24, 2011 Answer.  The only new allegations that Precision Seed is able to bring in its Answer are affirmative defenses to the now-allowed unjust enrichment crossclaim brought by Ionian against Precision Seed upon remand by the Ninth Circuit.

## II.  Affirmative Defenses

Precision Seed asserts eight affirmative defenses in response to Ionian's unjust enrichment crossclaim.  Ionian moves for judgment on the pleadings pursuant to Rule 12(c), or alternatively to strike under Rule 12(f), all of the affirmative defenses except the First Affirmative Defense (Failure to State a Claim) and the Eighth Affirmative Defense (Reservation of Rights).  For the reasons explained below, I grant the motion in part and deny it in part.

A motion for judgment on the pleadings may be brought after the pleadings are closed but

within such time as not to delay the trial. Fed. R. Civ. P. 12(c).[5] Rule 12(c) is "functionally identical" to Rule 12(b)(6) and "the same standard of review" applies to motions brought under either rule. <u>United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (internal quotation marks omitted). If matters outside the pleadings are presented to and not excluded by the court, the motion is to be treated as one for summary judgment. Fed. R. Civ. P. 12(d). "A judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 713 (9th Cir. 2001) (internal quotation marks omitted). To survive a Rule 12(c) motion, "the complaint's factual allegations, together with all reasonable inferences, [must] state a plausible claim for relief." <u>Cafasso</u>, 637 F.3d at 1054 (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]" <u>Iqbal</u>, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Under Rule 12(f), "a court may strike affirmative defenses . . . if they present an 'insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter.'" <u>Gessele v. Jack in the Box, Inc.</u>, No. 03:10-cv-00960-ST, 2011 WL 3881039, *1 (D. Or. Sept. 2, 2011) (quoting Rule 12(f)).

---

[5] Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed. Ionian notes that it may still respond to Precision Seed's affirmative defenses by filing a reply and therefore the pleadings are not technically closed. However, Ionian asserts, Precision Seed's pleadings are "closed" in that Precision Seed can plead no further. Ionian Rule 12 Mtns. at 14-15 n.2. But, Federal Rule of Civil Procedure 7(a)(7) allows a reply to an affirmative defense only by court order. Thus, as to the unjust enrichment crossclaim brought by Ionian against Precision Seed, the pleadings are in fact closed. And, Ionian may not reply to the affirmative defenses absent an order allowing it to do so.

A.  Second Affirmative Defense - Financial Interest Calculation & Offset

Ionian moves against the allegations in Paragraphs 59 and 60 of the Second Affirmative

Defense in which Precision Seed contends that Ionian's interest in the insurance proceeds should

be limited to the $330,000 "purchase price" agreed to by the parties in the original Purchase

Agreement and reduced by payments Precision Seed made under that Purchase Agreement.[6]

Oct. 27, 2014 Ans. at ¶¶ 59, 60.  Ionian argues that in prior rulings by both this Court and the

Ninth Circuit, Precision Seed has no claim under the Purchase Agreement and thus, any

affirmative defense asserting any rights under the Purchase Agreement must be stricken, or

Ionian is entitled to judgment on that defense.  I agree with Ionian.

In her September 27, 2011 Findings & Recommendation (F&R) regarding summary

judgment motions, Judge Stewart ruled against Precision Seed on its crossclaim alleging that

Ionian breached the Purchase Agreement.  One of the foundational issues before Judge Stewart

was whether the Purchase Agreement between Ionian and Paul Kloft, owner of Precision Seed, or

the Lease between Ionian and Precision Seed, controlled the parties' business relationship at the

time of the fire.  Ionian's Vice-President John Skourtes drafted the "Purchase Agreement" in

December 2004.  See Sept. 27, 2011 F&R at 5-7 (outlining history of parties' agreements and

conduct regarding the property).  The Lease was entered into on May 26, 2009.  Id. at 7.

Judge Stewart rejected Precision Seed's argument that the Purchase Agreement was valid

at the time of the fire.  Id. at 15-18.  She concluded that statutes regarding "Forfeiture Under

_____

[6]  Ionian does not appear to dispute the allegation in Paragraph 58 that its financial interest is limited to the structure, not the land.  See Ionian's Reply in Sup. of Rule 12 Mtns. at 13 ("Ionian and Precision agree that the value at issue is of the structure.").  I understand the motion to be limited to Paragraphs 59 and 60.

Land Sale Contract," at Oregon Revised Statutes §§ (O.R.S.) 93.905 - 93.945, did not apply

because the "Purchase Agreement was not a land sale contract" subject to the Oregon statutes.

Id. at 15-16.  Instead, it was only a "preliminary sales agreement."  Id. at 16.  She explained:

> Although the Purchase Agreement names the parties and describes the property
> and payment terms, it lacks many other provisions normally found in a land sale
> contract, such as maintenance obligations, remedies in the event of default or
> destruction, and insurance.  More importantly, it specifically states that Ionian is
> only "prepared to sell," not "sells" or "is selling" the property and [it] requires the
> preparation of an "official real estate contract" on January 1, 2006, upon receipt of
> the balloon payment, and the "figures on this agreement will be incorporated in
> the real estate contract to reflect the outstanding balance as of 1 Jan 06."  The
> Purchase Agreement is nothing more than an earnest money agreement providing
> for the later execution of a land sale installment contract.  It contains sufficient
> essential terms to entitle the purchaser to specific performance.  However, it is not
> a land sale contract subject to ORS 93.910.

Id. (citation omitted).

    She then rejected Precision Seed's arguments that the Lease was invalid because of a lack

of consideration and that it should be rescinded because of a mutual mistake of fact.  Id. at 16-17.

Addressing the second argument first, Judge Stewart made several observations and then stated

that

> Ionian and Mr. Kloft did not enter into a land sale contract in January 2006 as
> contemplated by the Purchase Agreement.  As a result, the Purchase Agreement
> expired and was replaced with or merged into the Lease.  Precision Seed
> challenges any termination of the Purchase Agreement due to the lack of any
> writing signed by the parties as required by the Statute of Frauds, ORS 41.580(e).
> However, as discussed above, the Purchase Agreement was merely an earnest
> money agreement [which] may be rescinded or superseded by an oral agreement
> without violating the Statute of Frauds.  Regardless, a material term of the
> Purchase Agreement was not performed, resulting in its abandonment.  The
> parties' relationship converted to a month-to-month tenancy until May 2009 when
> Ionian and Precision Seed executed the Lease.  Because the parties did not execute
> the Lease based on any mutual mistake of fact as to the status of the Purchase
> Agreement, no rescission remedy is available to invalidate the Lease.

8 - OPINION & ORDER

Id. at 17 (citations omitted).

Finally, Judge Stewart addressed the consideration argument. She noted that it was undisputed that Precision Seed was in default under the Purchase Agreement as of May 2009 due to late and missing payments. Id. at 17. The Lease reduced the monthly payment and allowed Precision Seed to avoid eviction. Id. Judge Stewart concluded this was more than sufficient consideration. Id. Based on her analysis, she concluded that the "Lease, not the Purchase Agreement was valid and in effect at the time of the fire." Id. at 18. Thus, she granted Ionian's motion as to the crossclaim brought against it by Precision Seed based on the Purchase Agreement. Id. at 27.

This Court adopted the F&R in a December 2, 2011 Order. ECF 133. One of the issues I specifically addressed in the Order was Judge Stewart's conclusion that the Lease, not the Purchase Agreement, controlled the parties' relationship at the time of the fire. Dec. 2, 2011 Ord. at pp. 5-11. In its objections to the F&R, Precision Seed argued that the Purchase Agreement was not a preliminary agreement to transfer property in the future, but instead was the actual agreement for the transfer of property. Id. at 7. Precision Seed contended it was an agreement for future monthly payments with an immediate transfer of possession. Id. It also argued that the fact that various "provisions normally found in a land sale contract" were missing in the Purchase Agreement was not significant, as Judge Stewart suggested, because those terms are implied by law. Id.

I rejected Precision Seed's arguments and explained:

Even if provisions regarding default or maintenance were in the Purchase Agreement, the language of the Purchase Agreement itself creates only a preliminary agreement to sell with the actual sale occurring after the balloon

9 - OPINION & ORDER

> payment was made and upon the preparation of the official real estate contract.
> Although the parties refer to themselves as the buyer and the seller, these terms
> and the fact that there were monthly payments and immediate possession are not
> determinative of the nature of the relationship. Both the monthly payments and
> immediate possession are consistent with a leasehold interest as well as a transfer
> of beneficial interest in the property. Thus, those provisions do not control the
> nature of the relationship created by the Purchase Agreement. The references to
> being "prepared" to sell, the fact that a balloon payment was due one year later
> and that this would trigger the preparation of the actual sales contract, and the fact
> that the real estate contract would reflect the outstanding balance as of January 1,
> 2006, indicate that the actual sale of the property did not occur with this Purchase
> Agreement but was instead an act to occur in the future.

Dec. 2, 2011 Ord. at 7-8.

I also rejected Precision Seed's argument about consideration, including an argument that

adopting Judge Stewart's conclusion would result in a forfeit of all the payments Kloft made

pursuant to the Purchase Agreement without due process of law or a clear agreement and

understanding of the risk of that loss. Id. at 9. I explained that the

> payments tendered by Kloft during the time the Purchase Agreement was in effect
> were not forfeited as a result of the expiration of the Purchase Agreement because
> Kloft and Precision Seed[] were using the property that entire period of time and
> the payments may be understood as either payments made toward a later purchase
> (which did not occur), or as lease payments if the sale was not completed.

Id.

Not only did Judge Stewart's F&R and this Court's Order adopting her F&R address the

Purchase Agreement, the Ninth Circuit did as well. Precision Seed appealed the issue of who

owned the warehouse at the time of the fire. 572 F. App'x 513. The Ninth Circuit held:

> The district court correctly found that Ionian, not Precision, owned the
> warehouse at the time of the fire. The unambiguous language of the letter
> agreement contemplated only a future intent to sell the warehouse, and the
> absence of terms that are required, or would usually be included, in a land sale
> contract further evidence that future intent[.] Precision was nothing more than a
> lessee of the warehouse.

10 - OPINION & ORDER

Id. (citations omitted).

In response to the instant motion, Precision Seed argues that because Ionian's motion is based on Rule 12(f), Precision Seed's allegations are taken as true. Thus, it contends that the factual allegations it makes regarding the market value of the property at the time of the sale and Ionian's expert's valuation of the land cannot be stricken. It also argues that in regard to Paragraph 60, although the Purchase Agreement was replaced, payments on a land sale contract or towards the purchase price can create equitable ownership. Precision Seed argues that it would be unjust for Ionian to gain the benefit of over fifty-percent of the agreed purchase price and retain the property without reducing its financial interest (as to Precision Seed) by the amount paid.

As should be clear from the quoted portions of the previous decisions issued in this case by Judge Stewart, myself, and the Ninth Circuit, the Purchase Agreement was never a purchase agreement. It was never an actual land sale contract. It was initially an agreement to sell in the future, but because that sale was never consummated, it is appropriate to consider, as discussed in the prior decisions, that the payments Precision Seed made to Ionian were rent/lease payments. Given that the contingency events for the contract to ripen into an actual land sale contract never occurred, there was no land sale contract and thus, the payments Precision Seed made are not "payments on a land sale contract or towards a purchase price" which Precision Seed asserts can create an equitable ownership. Thus, there is no basis for Precision Seed to assert a "financial interest" in the property by virtue of the payments it made to Ionian.

Based on the record of the case and the law of the case, I grant Ionian's motion directed to

11 - OPINION & ORDER

Paragraphs 59 and 60 of the Second Affirmative Defense.[7]

I also note that both parties address the issue of "excess" in discussing Ionian's motion directed to the Second Affirmative Defense. Each party makes arguments concerning the effect of a future finding by this Court that the parties' combined financial interests are less than the amount paid into the Court by Country Mutual. I do not address the "excess" issue because it is premature. If this Court later determines that the combined financial interest of both parties is less than the interpleaded sum, this Court will ask the parties at that point to further brief the issue.

B. Third Affirmative Defense - Marion County Action

The parties are presently litigating certain claims in Marion County Circuit Court. In the currently operative "Corrected Third Amended Complaint," Ionian brings three claims against Precision Seed: (1) breach of lease in which Ionian contends that Precision Seed failed to pay rent under the Lease from June to September 2009 and owes Ionian $12,000; (2) breach of lease in which Ionian alleges that Precision Seed breached its duty under the Lease to repair the damage to the warehouse resulting in damage to Ionian in an amount no less than $350,000; and (3) negligence in which Ionian alleges that Precision Seed and Kloft were negligent in several aspects regarding the fire and as a result, caused damage to Ionian in an amount of at least $350,000. Attchmt. 1 to Precision Seed's Mem. in Sup. of Mtn. to Dismiss. ECF 221-1.

In its Third Affirmative Defense asserted in response to Ionian's unjust enrichment crossclaim, Precision Seed alleges that to the extent that Ionian receives any award in the Marion

---

[7] Because I considered material outside of the pleadings I consider this a grant of summary judgment to Ionian.

County case relating to the damages to the structure, Precision Seed is entitled to an offset in the instant case. Oct. 27, 2014 Ans. at ¶ 61. Ionian moves for judgment on the pleadings under Rule 12(c), or alternatively to strike under Rule 12(f), the allegations in Paragraph 61, arguing that the collateral source rule precludes Precision Seed from seeking an offset for any award to Ionian in the Marion County case.

Generally, "[u]nder the collateral source rule," a "tortfeasor is not entitled to be relieved of the consequences of its tort by some third party's compensation to the victim." SEC v. Capital Consultants, LLC, 397 F.3d 733, 743 (9th Cir. 2005) (internal quotation marks omitted). Benefits "received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." McLean v. Runyon, 222 F.3d 1150, 1155-56 (9th Cir. 2000) (internal quotation marks omitted). In this case, Precision Seed is not a tortfeasor, this is not a tort claim, and importantly, the insurance proceeds are not a "collateral" source when they do not spring from a third party acting independently of Precision Seed but instead are obtained as a result of a contract between Precision Seed and its insurer.

Seibel v. Liberty Homes, Inc., 305 Or. 362, 752 P.2d 291 (1988) is distinguishable and does not stand for the proposition that the collateral source rule generally applies to breach of contract claims. See Malbco Holdings, LLC v. Amco Ins. Co., No. 03:08-cv-00885-ST, 2010 WL 143778, at *6 (D. Or. Jan. 11, 2010) (concluding that Seibel did not apply the collateral source rule to a breach of contract claim because the court viewed the claim as one for wrongful discharge). In Seibel, the Oregon Supreme Court concluded that social security benefits should not be deducted from a damage award in a breach of employment contract action. Id. at 369, 752 P.2d at 295. The court's holding was based on the unique nature of social security benefits, the

13 - OPINION & ORDER

recognition that allowing such a deduction could encourage employers to breach employment contracts as the more profitable of its options, and the recognition that to the extent a failure to offset social benefit payments in an employment contract action against an employer is viewed as an "unjustified windfall" to the plaintiff, the issue of recapturing the costs is between the benefits provider and its beneficiaries. Id. at 366-69, 752 P.2d at 293-95. Given the issues that influenced the court's decision, it is clear that the case does not provide authority for a blanket statement that the collateral source rule applies in contract cases. And, for the reasons noted above, even if it applied to some contract claims, it does not apply here.

Ionian suggests that any damages for the cost of repair that it recovers as a result of Precision Seed's breach of the Lease are independent of the insurance proceeds interpleaded by Country Mutual and at issue in this case. While I agree that the Lease creates its own obligations and duties between the parties, I reject Ionian's position that the terms of the Lease exist completely independently of the insurance proceeds. At issue in the instant case is "each parties' insured financial interest in the proceeds[.]" 572 F. App'x 513. The Lease provisions can impact the parties' insured financial interests in the property by affecting the definition and/or ownership of the covered property. While the starting point is the insurance policy language itself, to the extent the Lease terms alter the ownership of the covered property under the policy, the Lease impacts the parties' financial interest in the covered property.

Additionally, while I view the Third Affirmative Defense as premature because at this point, there is no award in the Marion County case, I agree with Precision Seed that if Ionian obtains a judgment in its favor on the breach of the lease/repair or negligence claims and the amount of the judgment is determined by the value of the structure, then such payment would

affect Ionian's financial interest in the insurance proceeds. If Ionian receives compensation for the value of the structure/covered property in its Marion County case, Ionian no longer has a financial interest in the insurance proceeds which represent the structure/covered property.

However, I reject Precision Seed's argument that its <u>potential</u> liability under the <u>Lease</u> for the cost of repair creates a financial interest for Precision Seed in the insurance proceeds. I agree with Ionian that the claim here is one under a property loss policy, not a liability policy. Precision Seed's obligation to repair exists only by virtue of the Lease and is not related to the insurance policy which protects against damage to the building only. Additionally, as between Precision Seed and the insurer Country Mutual, Precision Seed has no obligation to spend the insurance proceeds for the structure to actually repair it. Precision Seed will obtain insurance proceeds because it is the named insured on a property policy and property was destroyed. As between Precision Seed and the insurer, Precision Seed is not limited to using the insurance proceeds to repair the covered property. The only policy limitation on the proceeds for covered property is that the money Precision Seed receives cannot exceed its financial interest in the property. Precision Seed's obligation to repair is a duty created by the Lease entirely independent of the insurance proceeds and it has no affect on Precision Seed's financial interest in the property.

In summary on the Third Affirmative Defense, the collateral source rule does not preclude an offset. Should there be, at some point, a judgment in the Marion County case which requires payment from Precision Seed to Ionian for the value of the structure, such a payment would affect Ionian's financial interest in the covered property. Precision Seed's potential liability under the Lease for the cost of repair is not, however, related to its financial interest in

the covered property.  With those limitations in mind, I deny the motion.

    C.  Fourth Affirmative Defense - Waiver

    In its Fourth Affirmative Defense, Precision Seed asserts that in a September 22, 2009

letter to Precision Seed, Ionian waived any claims it had against Precision Seed "in relation to the

'repair' for which it asserts that the insurance proceeds were to cover." Oct. 27, 2014 Ans. at ¶

62.  Precision Seed further asserts that Ionian waived any claims it had for any

"contents/inventory or business personal property" in a November 23, 2009 letter to Country

Mutual.  Id. at ¶ 63.  Ionian moves for judgment on the pleadings or alternatively to strike, the

Fourth Affirmative Defense.[8]

    I agree with Ionian that the allegation in Paragraph 62 should be stricken because it is

immaterial.  As Ionian notes, Ionian is not making a claim in this case to the insurance proceeds

"in relation" to Precision Seed's obligation under the Lease to repair the building.  Alternatively,

the allegation is stricken because the letter does not evidence a waiver.

    Waiver is the intentional relinquishment or abandonment of a known right.  Gordon v.

Deloitte & Touche, LLP Grp. Long Term Disability Plan, 749 F.3d 746, 752 (9th Cir. 2014); see

also Moore v. Mut. of Enumclaw Ins. Co., 317 Or. 235, 240, 855 P.2d 626, 630 (1993) ("Waiver

is the intentional relinquishment or abandonment of a known right or privilege").  Waiver may be

implied by conduct, but there must be "clear, decisive and unequivocal conduct which indicates a

purpose to waive the legal rights involved[.]"  adidas-America, Inc. v. Payless Shoesource, Inc.,

546 F. Supp. 2d 1029, 1074 (D. Or. 2008) (internal quotation marks omitted); see also Brown v.

---

    [8]  Ionian's argument is directed to Paragraph 62 regarding the September 22, 2009 letter.  I
understand the motion to be directed only to the allegations raised in that paragraph.

Portland Sch. Dist. No. 1, 291 Or. 77, 84, 628 P.2d 1183, 1187 (1981) (intent must be expressed

by a "clear, unequivocal and decisive act").

> The September 22, 2009 letter from Skourtes to Kloft states:
>
> Structure was damaged by fire the last week in August 09. The structure was
> destroyed one hundred percent. Therefore lease between the parties is terminated.
> Only outstanding liability is cleanup of the site which should be the responsibility
> of the insurance carrier. Country Mutual. Plus the recovery of insurance covering
> the structure.
>
> Until the insurance claim is paid we can not make a rational business decision
> whether and when to rebuilt [sic].

Ex. A to Nov. 20, 2014 Carey Dec. at 7 [ECF 250]. Clearly, there is no express waiver by Ionian

of any rights it had under the Lease. And, as for an implied waiver, the termination of the Lease

is not "clear, unequivocal and decisive" conduct exhibiting Ionian's waiver of its right to have

Precision Seed repair the building. I grant Ionian's motion directed to Paragraph 62 of the Fourth

Affirmative Defense.

### D.  Fifth Affirmative Defense - Equitable Estoppel

Precision Seed alleges that Ionian should be equitably estopped from asserting a financial

interest in "business personal property lost in the fire" and in "the building in excess of

$72,000[.]" Oct. 27, 2014 Ans. at ¶ 65. Ionian moves to strike the Fifth Affirmative Defense

because it is insufficient.

In support of its Second Affirmative Defense, Precision Seed alleges that Ionian's

financial interest is limited to $72,000 because (1) the Purchase Agreement indicated that the

value of the property was $330,000; (2) the market value of the land was $84,000 which must be

subtracted from the $330,000, making Ionian's financial interest in the building no greater than

17 - OPINION & ORDER

$246,000; and (3) Precision Seed/Kloft paid $174,021.97 to Ionian for the purchase of the building, reducing Ionian's financial interest in the property to $72,000. Oct. 27, 2014 Ans. at ¶¶ 59, 60. Given my ruling granting summary judgment to Ionian on the Purchase Agreement allegations in the Second Affirmative Defense, the same allegation appearing here in the Fifth Affirmative Defense is similarly stricken.

As for the allegation regarding "business personal property," I note first that any issues related to "business personal property" do not appear to belong in the case because the insurance proceeds that are at issue are $350,000 for the structure and an additional $12,750 for the motor control system. As Ionian notes, it makes no claims to any business "personal property." Thus, the allegation appears to be immaterial. Accordingly, I grant Ionian's motion to strike the Fifth Affirmative Defense. To the extent Precision Seed's reference to "business personal property" somehow implicates the motor control system, Precision Seed has leave to amend this affirmative defense but it must articulate more precisely the business personal property at issue (namely, the motor control system), as well as the elements of its equitable estoppel theory.

E.  Sixth Affirmative Defense - Mitigation

Precision Seed alleges that Ionian had a duty to mitigate its damages and failed to do so by (1) failing to obtain its own insurance policy to cover its interests; (2) selling the land below market value after the fire; and (3) "failing to seek repairs to the structure pursuant to the Lease, while allowing Precision to seek recovery under the insurance policy to have funds to cover that potential liability as contemplated by the Lease." Oct. 27, 2014 Ans. at ¶ 66. Ionian moves to strike the Sixth Affirmative Defense as insufficient.

The concept of mitigation is misplaced here. The claim in this case is not a claim for

"damages."  "Damages" are "[m]oney claimed by, or ordered to be paid to, a person as

compensation for loss or injury[.]"  Black's Law Dictionary 416 (8th ed. 2004).  While Ionian's

claim for breach of contract against Country Mutual was a claim for damages, its current claim of

unjust enrichment as to Precision Seed is a claim for the insurance proceeds to the extent of

Ionian's financial interest in the property.  That is, Ionian's claim against Country Mutual sought

damages, but its crossclaim against Precision Seed seeks only its own financial interest in the

property and contends that to the extent Precision Seed is awarded more than its financial interest

in the property, Precision Seed is unjustly enriched.  It is an equitable claim seeking the equitable

distribution of the insurance proceeds according to each parties' respective financial interest in

the covered property.  Accordingly, at the outset, I reject the assertion that the duty to mitigate is

material at all.

Even if it is relevant, I grant Ionian's motion.  First, I agree with Ionian that Ionian's

"failure" to purchase its own insurance is something it could not have done to "mitigate" its

damages.  "The duty to mitigate damages does not arise until the party upon whom the duty is

impressed is aware of facts making the duty to mitigate necessary."  Home Indem. Co. v. Lane

Powell Moss & Miller, 43 F.3d 1322, 1329 (9th Cir. 1995) (further stating that "[the plaintiff]

had no duty to mitigate until it actually discovered the damage done to it").  Here, Ionian could

not have obtained fire insurance after the fire.  This is simply not a "mitigation" situation.

Second, any allegations regarding the land are immaterial because the value of the land is

not at issue.  The covered property at issue is the structure and the motor control system.  It

makes no difference what Ionian sold the land for as the interpleaded sums relate only to the

covered property, not to the land.  Ionian's financial interest in the covered property is unrelated

19 - OPINION & ORDER

to the land.  Thus, the issue of the sale price of the land for the insurance proceeds is completely

irrelevant and any concept of "mitigation" as related to the price of the land is immaterial.

Finally, the last alleged failure to mitigate theory Precision Seed asserts is unclear.

Precision Seed alleges that Ionian failed "to seek repairs to the structure pursuant to the Lease,"

while failing to allow Precision Seed to seek recovery under the insurance policy to cover the

cost of the repairs to the structure.  I do not know what this means.  To the extent Precision Seed

contends that Ionian failed to pursue its rights under the Lease, I reject that as basis for a

mitigation argument in regard to any insurance proceeds.  To the extent Precision Seed's

allegation is understood as contending that Ionian should have somehow forced Precision Seed to

make the repairs and then "allowed" Precision Seed to seek recovery under the insurance policy

and that by failing to so "force" and "allow," Ionian failed to mitigate its damages, I reject this

allegation as immaterial.  Suing Precision Seed for breach of the Lease for failing to make the

repairs is the only way Ionian could "pursue its rights under the Lease."  In the end, the fact that

the distribution of the insurance proceeds and the use of those proceeds to repair the building

could have occurred under a scenario other than this litigation does not mean that there is a

failure to mitigate.  I grant Ionian's motion as to the Sixth Affirmative Defense.

F.  Seventh Affirmative Defense - Unclean Hands

Precision Seed raises six separate "unclean hands" allegations in support of its Seventh

Affirmative Defense.  Ionian moves against each of them.  In a recent decision, Judge Aiken

explained that

> [t]o establish whether a party has unclean hands, the party asserting the
> defense must demonstrate that "'the plaintiff's conduct is inequitable and that the
> conduct relates to the subject matter of its claims.'"  Ayers v. Life Ins. Co., 869 F.

Supp.2d 1248, 1267 (D. Or. 2012) (citing Providence Health Plan v. Charriere, 666 F. Supp. 2d 1169, 1182 (D. Or. 2009) (quoting Brother Records, Inc. v. Jardine, 318 F.3d 900, 909 (9th Cir. 2003))). "'Equity requires that those seeking its protection shall have acted fairly and without fraud and deceit as to the controversy in issue.'" Id. (quoting Providence, 666 F. Supp. 2d at 1182 (quoting Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985))). "The doctrine, however, is not without limitations." North Pac. Lumber Co. v. Oliver, 286 Or. 639, 651, 596 P.2d 931 (1979). "In quantitative terms, the misconduct must be serious enough to justify a court's denying relief on an otherwise valid claim. Even equity does not require saintliness." Id.

Unum Life Ins. Co. of Am. v. Martin, No. 6:13-cv-00158-AA, 2014 WL 1154065, at *3 (D. Or. Mar. 19, 2014).

1. Motor Control System

Precision Seed alleges that Ionian has unclean hands because Ionian has allegedly made a false claim in this lawsuit for recovery of a motor control system it did not own and was not lost in the fire. Oct. 27, 2014 Ans. at ¶ 67a. Judge Stewart addressed the motor control system in her September 27, 2011 F&R. There, she noted that the funds interpleaded by Country Mutual included a separate $12,750 for a Siemens motor control system. Sept. 27, 2011 F&R at 22-23. She concluded that on the record before her, she could not determine who owned the motor control system that was destroyed in the fire or whether it was a fixture and thus included in the building coverage as opposed to being separately insured. Id. at 23. Precision Seed never argued, until now, that Ionian's claim to the motor control system was false.

I agree with Ionian that the allegation should be stricken either because it is immaterial or insufficient. First, even if Precision Seed successfully establishes that Ionian intentionally deceived this Court by claiming proceeds for the motor control system it did not own, Ionian would have "unclean hands" only as to the $12,750 for the motor control system. But, if

Precision Seed establishes that Ionian did not own the motor control system, Precision Seed will prevail as to the proceeds for the motor control system because it will have established that Ionian did not have a financial interest in that property. Thus, the defense is immaterial to the distribution of the proceeds for the motor control system.

Second, an allegation that Ionian made a "false claim" is insufficient for an unclean hands affirmative defense. Absent an allegation of fraud or intent to deceive, a "false" claim does not establish that Ionian acted with unclean hands. Third, even if Precision Seed included an allegation of fraud or intent to deceive, I reject the application of "unclean hands" because I view the conduct here as nothing more than competing claims to a piece of equipment.

2. Payments on Lease & Purchase Agreement

The next two allegations in support of Precision Seed's unclean hands affirmative defense concern the Purchase Agreement. Precision Seed alleges that Ionian mislead Precision Seed regarding the status of payments on the Purchase Agreement to induce Precision Seed into entering the Lease. Oct. 27, 2014 Ans. at ¶ 67b. Precision Seed also alleges that Ionian breached the Purchase Agreement so that it would not be forced to recognize its sale to Precision Seed and allow it to retain all purchase payments made by Precision Seed. Id. at ¶ 67c.

For the reasons previously explained, Precision Seed's allegations about the Purchase Agreement are immaterial and are contrary to the issues already decided in the case. Although Precision Seed's affirmative defense allegations do not expressly seek to reinstate the Purchase Agreement, the allegations of unclean hands based on payments Precision Seed considered to be towards a purchase and based on an alleged breach of the Purchase Agreement would effectively overrule the prior rulings in the case by essentially contending that the Purchase Agreement was

22 - OPINION & ORDER

valid.  Because the law of the case is otherwise, I strike the allegations as immaterial.

3.  Starting the Fire

Precision Seed alleges that Ionian has unclean hands because Ionian intentionally started the fire that destroyed the structure.  Oct. 27, 2014 Ans. at ¶ 67d.  Ionian moves to strike the allegation because it is "scandalous," completely unsupported factually (either in the case record or in the October 27, 2014 Answer), and because Precision Seed has made a contrary representation in the Marion County case.  See Ionian Rule 12 Mtns. at 23 (representing that Precision Seed's summary judgment motion in the Marion County case was partly based on its representation that the cause of the fire is unknown and that in support, Precision Seed cited to the inability of both the Marion County Fire Department and Country Mutual to determine a cause of the fire).

I agree with Ionian that the allegation "improperly casts a derogatory light" on Ionian and thus is scandalous.  Germaine Music v. Universal Songs of Polygram, 275 F. Supp. 2d 1288, 1300 (D. Nev. 2003).  The allegation is without any support and despite the presence of facts in record that Precision Seed argues support a finding that Ionian caused the fire, Precision Seed's allegation is completely speculative.  It is also contradicted by the fact that the insurer, which completed its own investigation, was unable to determine a cause of the fire and thus, interpleaded the funds with this Court.  In the end, however, the allegation is immaterial because the limited remand from the Ninth Circuit confines the issue before this Court to a determination of each party's financial interest in the covered property.

4.  Land Value

Precision Seed alleges that Ionian has unclean hands because Ionian demands to be

compensated for the land value which it sold during the pendency of this case. Oct. 17, 2014

Ans. at ¶ 67e. Ionian moves to strike the allegation as immaterial because it makes no claim

against the land. I agree with Ionian. The unjust enrichment crossclaim, as previously explained,

concerns insurance proceeds for the structure and the motor control system. It does not concern

the value of the land. Moreover, even if Ionian were making a claim for the value of the land,

that does not support an unclean hands affirmative defense. Rather, Ionian would be asserting a

"financial interest" that is not awardable by the insurance proceeds.[9]

### 5. Benefit of the Bargain

Precision Seed alleges that Ionian has unclean hands because when Ionian terminated the

Lease in September 2009, Ionian precluded Precision Seed from returning to the property or

repairing the building and thus, unilaterally acted to deprive Precision Seed of the benefit of the

bargain of the Lease, namely, the right to repair the building for less than the amount paid by the

insurance company and to retain any savings. Oct. 27, 2014 Ans. at ¶ 67f. As I understand this

allegation, Precision Seed contends that the termination of the Lease deprived Precision Seed of

the opportunity to pocket the difference between the insurance proceeds paid by Country Mutual

to Precision Seed and the actual cost of repair. Thus, Precision Seed contends, Ionian acted

unfairly and with unclean hands by denying Precision Seed the benefit of the bargain it made in

the Lease. Ionian moves against the allegation. I grant the motion.

The allegation is immaterial because such conduct is not unclean hands related to the

insurance proceeds. The insurance policy limits Precision Seed to its financial interest in the

---

[9] The appropriate response by Precision Seed to Ionian's allegation that Ionian's financial interest is $450,00 is to deny that allegation which Precision Seed did in Paragraph 56 of its October 27, 2014 Answer.

property.  This allegation regarding the contractual relationship of the parties under the Lease is

unrelated to Precision Seed's financial interest in the covered property.  Thus, the allegation is

stricken as immaterial or insufficient.

CONCLUSION

Ionian's Rule 12 Motions [237] are granted in part and denied in part.

IT IS SO ORDERED.

Dated this ___13___ day of ____February_____, 2015

Marco A. Hernandez
United States District Judge