IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IONIAN CORP., an Oregon corporation,

               Plaintiff,                      No. 03:10-cv-00199-HZ

       v.

COUNTRY MUTUAL INSURANCE
CORPORATION, a foreign corporation,         OPINION & ORDER

               Defendant/
               Interpleader Plaintiff

       v.

IONIAN CORP., an Oregon corporation,
PRECISION SEED CLEANERS, INC.
an Oregon corporation,

               Interpleader Defendants.

Gordon T. Carey
Attorney at Law
1020 S.W. Taylor Street, Suite 375
Portland, Oregon 97205

      Attorney for Plaintiff/Interpleader Defendant Ionian Corp.

1 - OPINION & ORDER

Frederick M. Millard
Douglas M. Bragg
419 5th Street,
Oregon City, Oregon 97045

  Attorney for Interpleader Defendant Precision Seed Cleaners, Inc.

HERNANDEZ, District Judge:

  Ionian Corp. moves for partial summary judgment on its unjust enrichment crossclaim against Precision Seed Cleaners, Inc.  The motion and Precision's response raise a number of issues regarding the insurance policy at issue in this case as well as a lease between these two parties.  For the reasons discussed below, I grant the motion in part.

  Much of the background of the dispute and the nature of the unjust enrichment crossclaim are discussed in the recently filed Opinion & Order denying Ionian's motion for a jury trial.  July 21, 2015 Op. & Ord. ECF 291.  I do not repeat that discussion here.  Essentially, Ionian's motion seeks a determination of the policy language.  Various issues are raised by both parties in an attempt to ascertain which party has a financial interest in what property as a result of the policy language and the Lease.

STANDARDS

  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting

former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

I. The Policy

In support of a motion for summary judgment filed in 2011, Precision filed a copy of the insurance policy as an attachment to the Affidavit of Dale Hussemann.[1] ECF 103. The policy in

---

[1] The entire policy is appended to Hussemann's Affidavit, although it was docketed in two parts: Docket #103 and Docket #103-1. Because the pages continue from #103 to #103-1 without interruption, I simply refer to the specific page number of the exhibit without noting the docket number.

3 - OPINION & ORDER

its entirety has three coverage parts: (1) commercial property coverage; (2) commercial general liability coverage; and (3) commercial inland marine coverage. Id. at p. 43. The issues here concern the property coverage.

Section A of the Building and Personal Property Coverage Form provides that Country Mutual will pay for "direct physical loss of or damage to Covered Property" at the insured premises. Id. at 79. Section A has several subsections, including subsection "1" defining "Covered Property." Id. Subsection 1 itself has two subsections: "a," which defines "Building"; and "b," which defines "Business Personal Property." Id.

The definition of "Covered Property" which applies to both "Building" and to "Business Personal Property" (BPP) is "the type of property described in this Section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property. Id. No "Property Not Covered" argument is raised by Ionian's motion or Precision's response. Further discussion of the definitions for "Building" and "BPP" is below.

In the Supplemental Declarations of the Commercial Property Coverage Part, there are separate insurance limits for building and BPP. E.g., id. at 11 (showing building limit of $275,000 and two separate coverages for BPP, one for $300,000 and another for $500,000).[2]

II. Building Coverage

This case concerns the building coverage portion of the Building & Personal Property

───────────────

    [2] It is unclear to the Court why this same form appears several times in the policy. Ex. 1 to Hussemann Decl. at 15, 19, 23, 27, 31, 35. Additionally, Ionian represents that while the Building coverage was originally $275,000, it was later increased to $350,000. However, neither party cites to a particular page of the policy reflecting that increase. Because Precision does not object to that representation, I assume that Ionian is correct that at the time of the fire, the policy limit for the Building coverage was $350,000.

4 - OPINION & ORDER

Coverage Form.  Country Mutual interpleaded only the $350,000 policy limits for the building portion of the policy with the Court.  See Country Mut.'s Am. Answer & Interpleader Counterclaim at ¶¶ 14, 21 (asserting that the property limit for the policy was $350,000 and stating that "property" referred to structure and machinery).[3]  ECF 61.  None of the proceeds for the BPP portion of the policy were deposited with the Court.  Instead, those were litigated in a separate case brought by Precision against Country Mutual.  Precision Seed Cleaners, Inc. v. Country Mut. Ins. Co., No. 03:10-cv-01023-HZ.

The definition of "Building" under Section A.1.a. makes clear that the building coverage is for more than just the building structure.  While the definition begins with the "building or structure described in the Declarations," it goes on to expressly include five separately identified types of property as "Building":  (1) completed additions; (2) fixtures, including outdoor fixtures; (3) permanently installed machinery and permanently installed equipment; (4) personal property owned by the insured that is used to maintain or service the building or structure or its premises, including fire extinguishing equipment, outdoor furniture, floor coverings, and appliances used for refrigeration, ventilating, cooking, dishwashing, or laundering; and (5) if not covered by other insurance, additions under construction, alterations, and repairs to the building or structure and materials, equipment, supplies, and temporary structures used for making additions, alterations, or repairs to the building or structure.  Ex. 1 to Hussemann Affid. at 79.

The policy language establishes that the building coverage is not limited to the physical

---

[3]  Country Mutual also interpleaded the separate sum of $12,750 for a Siemens Motor Control System.  Country Mut.'s Am. Answer & Interpleader Counterclaim at ¶ 20; see also Feb. 23, 2011 Order to Deposit Funds (noting amount of $372,750 to be deposited with the Court). The insurance proceeds for the Siemens Motor Control System are not at issue in this motion.

structure but includes other items such as fixtures, permanently installed machinery and equipment, and certain personal property as defined by the policy. But, absent identification of any particular items of property, this Court cannot resolve whether any given item fits within the definition of "Building" under Section A.1.a. of the policy.

I reject Precision's argument that BPP is part of the "Covered Property" at issue in this case. As indicated above, "Covered Property" includes both building and BPP. Precision argues that because Section A.1 defines "Covered Property" to include both Building and BPP, BPP is part of the "Covered Property" at issue in this lawsuit. The Supplemental Declarations page makes clear that the "Building" coverage is separate from the "BPP" coverage even though both are "Covered Property" under Section A.1. And, as explained above, the amount interpleaded into this Court is limited to the building coverage, meaning Section A.1.a. This lawsuit is not concerned with the BPP coverage in Section A.1.b.

Next, Precision contends that if its property comes within the building portion of the coverage under Section A.1.a(1)-(5), and went uncompensated in the other lawsuit which sought coverage of BPP under Section A.1.b., that property is nonetheless covered under the Building portion of the policy. Precision represents that it recovered $2,220,000 for its scheduled and unscheduled equipment under the BPP coverage in its lawsuit against Country Mutual as a result of a settlement. It asserts that it remains uncompensated for $221,623.75 because its actual claim for the equipment was $2,441,623.75.[4] Precision's position is that to the extent a particular piece

---

[4] In support of the $2,441,623.75 amount, Precision cites to the Itemized List of Special Damages it submitted with its pretrial filings in the Country Mutual case. See ECF 157 in 03:10-cv-01023-HZ. But, that figure is inconsistent with Paul Kloft's Declaration submitted earlier in that case in support of Precision's motion for summary judgment. ECF 49 in 03:10-cv-01023-HZ (Kloft Decl. at ¶¶ 16, 17; Exs. 4, 5 to Kloft Decl. showing a total of $2,266,184.23 claimed for

of property meets the definition of "Building" under Section A.1.a., the fact that Precision sought coverage for that property in the case against Country Mutual under Section A.1.b for BPP does not preclude it from seeking coverage here.  I disagree.

Even assuming for the purposes of this Opinion that certain property could be covered under both portions of the policy, Precision cannot establish that it remains "uncompensated" for any property for which it sought coverage as BPP in the other lawsuit.  At oral argument on Ionian's pending motion for partial summary judgment, Precision's counsel stated that Precision did not assign any of the $2,220,000 equipment-related settlement funds to any particular piece of equipment.  This means that Precision is unable to establish that it was uncompensated for any given piece of property.

Additionally, Precision's settlement with Country was a "compromise of disputed claims[.]" Precision Seed Cleaners, Inc. v. Country Mut. Ins. Co., No. 03:10-cv-01023-HZ, Opinion at 4 (D. Or. Nov. 21, 2013) (discussing, in the context of an award of prejudgment interest, that the amounts paid by Country to Precision in settling the case were on account of particular losses and that the settlement payments were a compromise of disputed claims).  In accepting that settlement, Precision dismissed its claims and thus essentially waived any right to continue to pursue payment from Country for the losses it asserted in that case.  See Bragg Oct. 4, 2013 Decl. at ¶ 6 (quoting settlement agreement between Precision and Country Mutual in the 10-1023 case as providing that "all claims are dismissed").  Precision cannot now seek payment from the funds interpleaded by Country, for a claim that it has already dismissed.

---

unscheduled and scheduled equipment).  With the latter figure, the allegedly uncompensated amount is $46,184.23.

7 - OPINION & ORDER

In settling its BPP claim against Country, Precision abandoned any continued claim to a
financial interest in the property at issue in that claim.  Therefore, even if Precision owned
property which meets the definition of "Building" under Section A.1.a of the policy, it cannot
now make a claim under the building coverage if it sought compensation for that property in its
previous lawsuit against Country under the BPP portion of the policy in Section A.1.b.

III.  The Lease's Effect on Property Ownership

Ionian and Precision were parties to a lease executed May 26, 2009.  Ex. 2 to July 10,
2015 Bragg Decl.  Ionian leased a 14,000 square foot building on .72 acres at 8765 Pueblo
Avenue to Precision.  Id.  The Lease commenced on June 1, 2009 and was to run for three years,
until May 31, 2012.  Id.  The Lease contained the following language: "Any improvements to the
premises whether installed by the lessor or lessee shall become [p]art of the building and the
property of lessor unless otherwise provided[.]"  Id.

Precision argues that because the word "improvement" as used in the Lease does not
encompass all permanently installed machinery or equipment or all fixtures, Precision retained
ownership of these items despite the Lease's language providing that any improvements installed
by Precision belonged to Ionian.  Thus, any machinery and equipment items that Precision
installed that do not meet the definition of improvement belong to Precision, not to Ionian.

The Lease does not define "improvement."  However, it is commonly defined as "[a]n
addition to real property, whether permanent or not, esp., one that increases its value or utility or
enhances its appearance."  Black's Law Dictionary 826 (9th ed. 2004).  Nothing in the Lease
suggests that the word "improvement" carries anything other than its ordinary, common meaning.
Thus, under the terms of the Lease, any piece of property (equipment, machinery, etc.), that

8 - OPINION & ORDER

Precision installed or otherwise "added" to the real property, whether permanent or not, is an improvement if it tended to increase the value or utility of the real property or enhance its appearance.

Without the identification of a single piece of property at issue, I cannot tell whether a particular item is or is not an "improvement" under the Lease and thus is owned by Ionian.  I agree with Precision that whether or not a piece of equipment or machinery was permanently installed is not determinative of whether it is an "improvement" under the Lease.  But, as defined, an "improvement" under the Lease is broad and includes, as noted, additions to real property that increase the value or utility of that real property or enhance its appearance.  It may be that Precision can establish that a particular piece of equipment was not intended to increase the value of the real property or enhance its appearance.  But it seems less likely that Precision will be able to demonstrate that such machinery or equipment did not increase the utility of the real property.  Inasmuch as no particular property has been identified in the motion briefing, however, I cannot determine whether a particular piece of property which (a) meets the Building coverage definition in the first instance and (b) was not a part of Precision's BPP claim in its suit against Country, and is thus a piece of property in which Precision has a financial interest, is or is not an improvement under the Lease.

## IV.  Tenant's Interest

Precision contends that even if Ionian is the owner of all machinery, equipment, fixtures and the like under the Lease, Precision retains a financial interest in the property as a lessee.[5]  In

---

[5]  Ionian concedes that Precision might have a financial interest in the remaining leasehold which, Ionian notes, was in default.  See Ionian's Unjust Enrichment Crossclaim at ¶ 24 (asserting that Precision is entitled to none of the interpleaded funds, but alternatively

support, Precision cites cases indicating that "the owner of property which has been insured by a lessee has no claim on the insurance proceeds[.]" Transp. Equip. Rentals, Inc. v. Or. Auto, Ins. Co., 257 Or. 288, 299, 478 P.2d 620, 626 (1970) (citing Miller v. Gold Beach Packing Co., 131 Or. 302, 282 P. 764 (1929)).

Based on these cases, Precision argues that it does not need to be the *owner* of property under the policy to recover on the policy following a loss.  It contends that it derived benefits from the fixtures it attached and from the machinery and equipment it installed and suffered an actual and substantial loss due to the fire.  Thus, it should be allowed to present evidence at trial as to its insurable interest in the property.

Again, Precision makes this argument in the abstract because it fails to identify a single piece of property it attached or installed and from which it derived a benefit.  Putting that aside, however, I reject Precision's argument because the cases it relies on are distinguishable.  As Judge Stewart previously noted in this case, the lease in Miller, unlike in the instant case, did not require the assignee to obtain insurance to cover the lessor's building.  Ionian Corp. v. Country Mut. Ins. Co., 744 F. Supp. 2d 1104, 1111 (D. Or. 2010).  And, Judge Stewart continued,

> In Yoshida [v. Sec. Ins. Co., 145 Or. 325, 26 P.2d 1082 (1933)], the essential fact on which the court relied, and the fact missing from this case, is that the contracting parties had deleted a provision contained in previous leases requiring the lessees to insure the premises and to pay the lessors the insurance proceeds. Finally, in contrast to the present case, the owner in Transp. Equip. Rentals, Inc. was in possession of the asset when it was destroyed and had already been compensated under his own insurance policy.

Id.  Because the cases were distinguishable, Judge Stewart found them "not helpful or

---

acknowledging that the most Precision is entitled to is the fair market value of Precision's remaining leasehold).  The leasehold issue and the value of that leasehold are not at issue in this motion.

persuasive" and rejected Country Mutual's argument that "Ionian is not entitled to any proceeds

under Precision Seeds' insurance policy since it is a stranger to the contract and its benefits." Id.[6]

      In the cases relied on by Precision, there was "no evidence that the insured intended to

indemnify" the property owner.  See Transp. Equip. Rentals, 257 Or. at 299, 478 P.2d at 626

(Miller "is clear authority for the rule that the owner of property which has been insured by a

lessee has no claim on the insurance proceeds, where there is no evidence that the insured

intended to indemnify him.") (emphasis added).  In contrast, the Lease in this case required

Precision to purchase fire insurance on Ionian's building.  Ex. 2 to July 10, 2015 Bragg Decl.

Thus, as Judge Stewart has already found, these cases are not helpful or persuasive and do not

establish that Precision has an insurable interest in the property as a lessee.

      Finally, Precision's position would contradict what I understand to be the Ninth Circuit's

remand instructions.  If Precision retained an insurable interest in the covered property by virtue

of its lessee status, then Ionian's ownership of the covered property would be irrelevant.  In that

case, Ionian would be unable to establish a financial interest in the property.  In that case, the

Ninth Circuit would not have remanded the case with the instruction that this Court determine

the respective insured financial interests each party has in the insurance proceeds.  As the Ninth

Circuit noted, "[a]warding all of the proceeds to Precision would contradict the plain terms of the

insurance policy."  Ionian Corp. v. Country Mut. Ins. Co., 572 F. A'ppx 513, 515  (9th Cir. 2014).

Precision's claim to an insurable interest in all property even if owned by Ionian, is inconsistent

---

[6] At the time Judge Stewart issued her decision, Precision was not yet a party to the case.
Moreover, Judge Stewart had full consent from both Ionian and Country Mutual and thus she
issued this decision on summary judgment motions as an Opinion & Order rather than a Findings
& Recommendation.

with the Ninth Circuit's holding and instructions.

CONCLUSION

Ionian's motion for partial summary judgment [285] is granted to the extent that it seeks a determination that the $350,000 interpleaded by Country Mutual into the Court represents the proceeds of the Building coverage under Section A.1.a of the policy.  It is also granted to the extent that it seeks a determination that any property claimed by Precision under the BPP part of the policy as part of the claim litigated in the Precision Seed v. Country Mutual case, 03:10-cv-01023-HZ, may not be compensated out of the $350,000 interpleaded sum.  To the extent Ionian seeks a determination that any piece of machinery or equipment, or any fixture, installed by Precision is an improvement under the Lease, I deny the motion because without evidence regarding the property, I cannot make that determination in the abstract.  The parties shall be guided, however, by the discussion in this Opinion of the meaning of the word "improvement" in the Lease.

IT IS SO ORDERED.

Dated this ____3____ day of ___August___, 2015

_____
Marco A. Hernandez
United States District Judge

12 - OPINION & ORDER